Carrie Goldberg
C.A. GOLDBERG, PLLC
16 Court Streeet, 33rd Floor
Brooklyn, NY 11241
T (646)666-8908
E: carrie@cagoldberglaw.com
NYS Bar No. 4542411
Northern District # 702885
*Attorneys for Plaintiff Estate of Bianca Devins*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ESTATE OF BIANCA DEVINS,<br>Plaintiff,<br><br>v.<br><br>ONEIDA COUNTY, ONEIDA COUNTY DISTRICT ATTORNEY'S OFFICE, SCOTT D. MCNAMARA, JOHN DOES 1-20<br>Defendants. | Case No.   6:21-CV-0802 (GTS/ATB)<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>1.  **18 U.S.C. § 2252A**<br>2.  **18 U.S.C. §2255**<br>3.  **Negligence**<br>4.  **Negligent Supervision** |

PLAINTIFF, by attorneys, Carrie Goldberg, Esq. at C. A. Goldberg, PLLC, files this

Complaint as follows:

### PRELIMINARY STATEMENT

1.  This is a case about the Oneida County District Attorney's Office unconscionable

    dissemination of snuff and child pornography of a 17-year-old murder victim.

2.  On July 14, 2019, 17-year-old Bianca Devins was murdered in her hometown of

    Utica, New York by 21-year-old Brandon Clark.

3.  The two had met on the internet about two months prior.

4.  Before murdering Bianca, Clark set up a camera on the dashboard of his SUV and had

1

sex with Bianca.

5. In an apparent act of premeditation, Clark then stabbed Bianca to death. The sex and murder were recorded by Clark.

6. Clark sent various direct messages saying goodbye to his loved ones, posted screenshots of Bianca's corpse to social media, and directed his aunt to a suicide note he'd left in his bedroom.

7. Intending to report a murder-suicide, Clark called 911. When law enforcers responded four minutes later, they found Clark still alive outside his car on a tarp taking selfies on top of Bianca and sawing at his own neck in an apparent suicide attempt.

8. After a struggle with the officer(s), Clark was arrested and taken to the hospital.

9. Investigators seized Clark's devices and Bianca's phone from the scene.

10. Clark pleaded guilty to second degree murder and was sentenced to 25 years to life on March 16, 2021.

11. The case attracted a considerable amount of media attention, including by documentary makers and media outlets because of the outsized role social media played in Bianca and Clark's lives, Bianca's death, and the subsequent harassment faced by Bianca's family.

12. During her short life, Bianca had struggled with trauma including from when she was fifteen and a man drugged and sexually assaulted her and published the rape video on Discord.  Up until her death, Bianca had told people this man was still hassling her and threatening to kidnap her if she ever blocked him.  At the time of her death adult men from Discord, 4chan, and Reddit frequently solicited nudes from Bianca.

13. Clark's murder of Bianca was partly incited from jealousy and anger caused by these incidents of child sexual exploitation which he interpreted as proof of Bianca's

2

infidelity.

14. To the horror of Kimberly Devins, Bianca's mother, two sets of documentary makers informed her the District Attorney's office had given them the sex and murder videos.

15. Two Assistant District Attorneys had previously promised Kimberly Devins the sex and murder videos would never be shared. Kimberly Devins, by her counsel, demanded that the Utica Police Department and the District Attorney's office stop disseminating the unlawful videos and cautioned them that some of the videos and photos violated federal child pornography laws.

16. In an apparent act of retaliation, the Utica Police Department and Oneida County District Attorney's Office withdrew its offer to share evidence with Bianca's own family and told them they could make a motion to the criminal court that had already sentenced Clark and where the family had no standing. To date, Bianca's own mother has not seen the horrifying videos of her daughter's last moments on earth, she seemingly being the only one so restricted.

17. On June 28, 2021, Kimberly Devins learned that Oneida County had responded to the FOIL requests of Alissa Tallman aka Antimone Layne, a YouTuber and confidante of Clark's, by sending Layne material that included the sex and murder videos as well as the contents of Bianca's phone which contained nude images and videos of Bianca and that violated our federal child pornography laws to share or possess.

18. The Oneida County District Attorney's Office has acted unconscionably and lawlessly toward Bianca, committing new crimes against her.

19. By releasing the murder video and child pornography to the media and the public the DA's Office has further devastated the legacy of Bianca Devins.

20. Now the Estate of Bianca Devins sues Oneida County, Oneida County District

Attorney's Office, Scott McNamara, and John Does 1-20 for disseminating child pornography of Bianca Devins (18 U.S.C. § 2252A and 18 U.S.C. § 2255) and for common law negligence and negligent supervision. In addition to damages, Plaintiff seeks injunctive relief barring Defendants from further dissemination.

## PARTIES, JURISDICTION, AND VENUE

21. Bianca Devins was a citizen and resident of Oneida County and State of New York.

22. The Estate of Bianca Devins is administered by Kimberly Devins. Kimberly Devins is a citizen and resident of Oneida County and State of New York.

23. The Oneida County Surrogate's Court in Oneida County issued the Limited Letters of Administration for the Estate of Bianca Devins, File # 2020-766.

24. Defendant Oneida County is a municipality with a principal location in Oneida County, New York and Defendant Oneida County controls Oneida County District Attorney's Office which also has a principal location in Oneida County, New York.

25. Defendant Scott McNamara is the District Attorney of Oneida County who, upon information and belief, resides in Oneida County, New York.  He is being sued in his individual and official capacity.

26. John Does 1-20 are employees and/or agents of Oneida County and Oneida County District Attorney's Office who participated in the claims alleged herein.

27. Subject matter for claims arising under 18 U.S. Code Chapter 110 are proper pursuant to 28 U.S.C. Section 1331.

28. Venue is proper pursuant to 18 U.S. Code Section 2255 (c)(1) and Section 1391 of Title 28.

29. The Court has Supplemental Jurisdicition over the common law claims pursusant to 28 U.S.C. 1367.

## NOTICE OF CLAIM

30. On June 28, 2021, the Estate of Bianca Devins served a Notice of Claim on Oneida County and Oneida County District Attorney's Office.

## FACTS

### *The Life and Death of Bianca Devins*

31. Bianca was born and raised in Utica, New York.

32. Bianca shared a close relationship with her mom and younger sister, Olivia. And treated her paternal half-sister as if she were her own.

33. Bianca was beautiful and brooding. She loved Nirvana, true crime, manga characters and animé and was an excellent artist, intent on teaching Olivia her skills.

34. Bianca could be withdrawn, but then snap out of it. She struggled sometimes with self-harm, especially cutting herself.

35. On June 28, 2019, Bianca graduated from high school. She was seventeen years old. She had plans to attend Mohawk Valley Community College in the fall to study psychology.

36. The day after graduation, Bianca's family threw a party for her. Bianca invited Brandon Clark, a guy she'd met online the month prior.  Clark was 21 years old at the time and lived with his aunt about an hour away from Bianca in Cicero, New York.

37. For the past month and a half, Clark would drive Bianca, her sister, and friends around in his SUV, buy them alcohol and drugs.  Writings confiscated from Clark's eventual jail cell showed he was obsessed with Bianca immediately.  He stayed out all night to see her even if meant calling in sick at work, quit his job to make more money to buy her gifts, got two tattoos he dedicated to her (a swingset because she liked to swing

and the big dipper because they'd look for it in the night sky a couple times), obsessively poured over her social media, did reconnaissance on the internet soliciting information on "chans" about her, and engaged in extreme risky and self-harming conduct (drinking, drugging, high speed driving, extreme dieting, exiting his car and surfing on top of it while it was moving) when Bianca's behavior suggested she was less smitten by him than he was by her.  Indeed, Bianca had told her mom that she just saw Clark as a friend.

38. By the time she graduated high school, Bianca had already had several traumatic experiences caused by men she met online, including an 18-year-old she'd met on 4chan when she was 15, who was controlling and abusive and accessed her social media accounts. In a fit of jealous rage, he'd sent sex videos of him and then 15-year-old Bianca to her entire Discord server.  Bianca sought help from law enforcers, but stopped cooperating when the offender threatened suicide.  Upon information and belief, in an unrelated matter, Bianca had also been contacted by federal investigators who'd traced underage sexual content depicting Bianca in an adult man's possession. After the Discord incident, Bianca had become well-known by a certain sector of the internet and she was frequently pestered by adult men to send them nudes. She sometimes obliged; in her mind it felt empowering like she was in control of her own body, but she also knew she couldn't really say no without the possibility of the Discord video reemerging.

39. On July 13, 2019, Clark drove to Utica to pick Bianca up for a Nicole Dollanganger concert in Queens, New York.  By that time, Bianca had begun complaining to her mom of Clark's clinginess.  Much to Clark's disappointment, Bianca had arranged for

another male friend to meet them at the concert which she'd mentioned to Clark in advance.

40. After the concert, Clark drove Bianca back to Utica.  She slept in the car. On the way home, Clark exited the highway and parked the SUV at the end of Poe Street in Utica, outside a park they'd visited the first time they'd met.  Using a clamp affixed to the dashboard, Clark set up his phone to film he and Bianca. Clark woke Bianca up and the two had sex.  The police later obtained five videos of Bianca and Clark having sex (1:28 minutes, 1:26 minutes, 51 seconds, 2:34 minutes, 12 seconds) that Clark had recorded.  From these videos, Clark made three screen captures.

41. About thirty minutes later, Clark set up the video camera again and made two videos (10:14 minutes and 18 seconds) depicting Clark accusing Bianca of infidelity and stabbing Bianca's neck with a knife while she pleaded for her life. Clark sent texts to his family and Aunt alternating between "I'm sorry" and "I love you."  He then informed his Aunt that his "will is in the top drawer in my dresser."

42. Clark then proceeded to post messages and images of Bianca to Facebook, Discord, Instagram, and Snapchat showing he had killed Bianca and was in the process of killing himself. Some of the images showed Bianca bloody and laying on a tarp.

43. At 7:33am Clark called 911.

44. Utica Police Department Officer Zaza was the first to arrive on the scene five minutes later and observed Clark stabbing his own neck and taking selfies. Brandishing the knife at Zaza, Clark said "Don't touch me or you die." Officers Merrick, Weir, and Dodge wrestled the knife out of Clark's hand and put him in handcuffs.

45. The medics took Clark to St. Elizabeth's Hospital in Utica.

46. According to a jailhouse diary confiscated from Clark's cell, Clark had been agitated
    for about a week prior to the concert.  Clark had seen a man's name show up on
    Bianca's phone messaging.  It was the same man whom Bianca had once confided to
    Clark had drugged and raped her and then spread the rape video on Discord. Bianca
    told Clark the man was blackmailing her and threatened to kidnap her if she ever
    blocked him. Nevertheless, Clark insisted Bianca block him. When Bianca resisted,
    citing her terror, Clark accused her of cheating on him.

47. To appease Clark for the sake of their friendship, Bianca added him to her Discord
    server.  Going through her history on Discord, Clark observed that just a couple days
    before the concert, four adult men had publicly solicited Bianca for nude pictures.
    One of them asked her to write his name on her nude body and reminded her to crop
    her head out of the image because "no face, no case" – an acknowledgement that she
    was underage and he was not.  Clark became obsessed with the competition for Bianca
    and her ingratitude toward him.

48. Immediately after Bianca's death, news of the murder circulated on social media
    because of the pictures Clark posted which went viral.

49. The case garnered media attention, including articles from Rolling Stone, USA Today,
    and Buzzfeed.

50. Social media, especially Instagram, was so slow to respond to the viral spread of the
    death pictures that Bianca and Clark became memes and hashtags. For over 24 hours,
    Instagram refused to remove Clark's account and he amassed adoring fans who
    praised him.

51. Meanwhile, Bianca's Instagram account grew in followers from 2,000 to 166,000 in
    her death. Clark's newfound fans posted violent and malicious comments on her

pictures celebrating her murder and besieged the accounts of her family members with images of Bianca's dead body.

52. Instagram has been completely useless in preventing and regulating the spread of murder material and to date refuses to cede control of Bianca's Instagram pages to the estate.

### Oneida County's Prosecution of Brandon Clark

53. While in prison, Clark was befriended by a YouTube content creator who resided in Pennsylvania, Alissa Tallman, aka Antimone Layne. Layne posted her first video about Bianca's murder on July 16, 2019.  Over the next two years, Layne posted twenty more videos about Clark's murder of Bianca, totaling almost 2,000 minutes. Upon information and belief, Layne became an important confidant of Clark's while he was in prison and the two exchanged letters.  Clark even sent her annotated transcripts of his video killing Bianca.

54. On February 10, 2020, Clark pleaded guilty to second-degree murder in Oneida County Court.  The sentencing was originally scheduled for April 6, 2020 but was postponed because of the coronavirus pandemic. On or about June 2, 2020, Clark made a motion to withdraw his guilty plea.  After months of legal wrangling, the motion was denied.

### Oneida County DA Disseminates Child Pornography of Bianca to the Media

55. Throughout this time, documentaries produced by CBS' 48 Hours and A&E were underway. Upon information and belief, MTV and Peacock TV were also trying to cover the case.

56. From the beginning of the criminal proceeding, Kimberly was fearful that somehow the murder and sex video would be released. In the very month of Bianca's death she

confronted ADAs Sarah DeMellier and Michael Nolan who were prosecuting Brandon Clark abput her concerns. They assured Kimberly that they would do whatever it took to keep Bianca's videos and photos private. They even promised they would file a motion in court to have the videos and photos sealed so the DA's office would not be compelled to release them despite receving FOIL requests.

57. The A&E producers were in frequent contact with Clark's new friend and YouTuber, Ms. Layne, in the first half of 2020 and even presented her with a contract binding her to participate in their production. Upon information and belief, Ms. Layne was nudged by A&E producers to convince Clark to withdraw his guilty plea, a trial making for a much splashier documentary.

58. A&E producers were also in frequent communication with the Oneida County DA's office.  The relationship with the DA's office was so tight that it was the A&E producers – not the DA's office -- who first broke the shattering news to Kimberly Devins that Clark was trying to withdraw his guilty plea.

59. Upon information and belief, The Oneida County District Attorneys office was embarrassed by the media's portrayal of its prosecution in the unrelated case of Kaitlyn Conley in the murder of Dr. Mary Yoder and regretted not defending itself in the 2018 ABC Dateline feature on the case.[1]  Upon information and belief, the DA's Office saw the murder of Bianca Devins as the perfect opportunity for redemption in

---

[1] Disturbingly, Oneida County District Attorney seems to have defended itself vigilante-style. Not unlike with Bianca, OCDA had no regard for Mary Yoder's privacy and turned her life into a feeding frenzy for the media by publishing on its website thousands of pages of evidence in its case against Conley, including deeply personal content pertaining to the victim and her family such as her autopsy, credit card statements, diary entries, greeting cards and private poetry, business records, etc.  https://www.ocgov.net/distatty/EvidenceProsecution (last visited July 13, 2021.)

the media, and as a result, courted the press and documentary makers enthusiastically turning over even illegal evidence to them that exploited Bianca's privacy and rights, not to mention federal child pornography laws.

60. From speaking to the documentary producers and the prosecutors, Kimberly Devins learned that the DA's office had been liberally sharing evidence with the producers for their various productions.

61. Producers at both 48 Hours and A&E informed Kimberly that they possessed the murder video, sex videos, and nude photos from Bianca's phone.

62. When confronted, Assistant District Attorneys Sarah DeMellier and Michael Nolan admitted the DA's office had shared the content.

63. Kimberly was shattered that her daughter's murder video and sex video had been released.

64. In addition to her grave concerns for Bianca's privacy and legacy, because of the obsessive interest in the case, Kimberly feared the material would go viral if it got into the wrong hands.  In addition to her grave concerns for Bianca's privacy and legacy, because of the obsessive interest in the case, Kimberly feared the material would go viral if it got into the wrong hands—a threat that has already begun to materialize. Just yesterday on July 14, 2021, the 2-year anniversary of Bianca's murder, Instagram users posted the following comments under her last post: "I have biancas sex tape 😔 💯 💯" and "bianca i have your nudes 😺."

65. Additionally, Kimberly Devins learned that the police department was also sharing evidence beyond officers' professional capacity. ADA Sarah DeMellier reported to Kimberly that at a local tavern, an officer was sharing body cam footage from the crime scene depicting officers fighting Clark, Bianca's body visible in the background.

66. Despsite their reckless dissemination of evidence, Kimberly became the one person the officials refused to show the evidence to. At first, it was by Kimberly's choice – she wanted to wait until she was emotionally ready.  It was important to Kimberly that she view the evidence in a controlled environment with the support of her family and counsel.

67. In November 2020, Kimberly informed law enforcers she was finally ready to view the painful evidence.

68. On November 23, 2020, Kimberly went with her father and counsel to a pre-scheduled meeting with law enforcers to view the evidence. ADA Michael Nolan showed up at the meeting and informed Kimberly they'd changed their mind and she'd need to wait until after Clark's sentencing.

69. At the meeting, Kimberly expressed her confusion that the media was receiving the shattering evidence, and not the murder victim's own mother. Kimberly also expressed that it was unlawful for law enforcers to share sex videos and nude photos of 17-year-old Bianca in response to FOIL requests.

70. Participants at the meeting corrected Kimberly about two assumptions.  First, they said, the District Attorney's sharing of the videos happened not pursuant to FOIL requests. Second, they said that New York's child pornography laws apply to kids younger than Bianca's 17 years.  In response, Kimberly and her counsel specified federal child pornography laws apply to depictions of children under the age of 18 and also nothwithstanding the law that Bianca, even in her death, had a right to sexual privacy.

71. On February 15, 2021 counsel for the Estate of Bianca Devins sent District Attorney Scott McNamara a letter requesting they not share the murder or sex video anymore

and that they notify everybody they've shared it with that it is illegal to possess or share.  The letter requested a response.

72. On March 16, 2021 Clark was sentenced to 25 years to life for murder in the second degree of Bianca Devins.

73. On March 22, 2021, counsel for the Estate of Bianca Devins sent another letter to District Attorney McNamara grieving his failure to respond to the February letter and stating again that the office should not respond to FOIL requests by sending out the sex and murder content.

74. On March 22, 2021, Assistant District Attorney DeMellier responded by email stating that the Oneida County District Attorney's Office "will not be providing as part of any FOIL request the still images or video of Bianca and Brandon engaging in sexual intercourse or Brandon's commission of the homicide."

75. On March 24, 2021, with the sentencing behind them, Kimberly Devins tried once again to make an appointment with law enforcers to view the horrific evidence of her daughter's final moments.  She was forwarded to Utica's City Corporation Counsel Office, who over the course of many emails and calls informed her that they did not want to share the evidence with her.  The reason cited was their belief that she was interested in suing Facebook and Instagram and they "didn't want to be involved."

76. In June 2021, Kimberly learned that other people were receiving responses to their FOIL requests for evidence in Clark's case, including the murder video.

77. On June 25, 2021, the DA's response to Kimberly's own FOIL request arrived, containing a modest amount of redacted evidence.

### *Oneida County DA Disseminates Child Pornography of Bianca to Members of the Public*

78. On June 29, 2021, Clark's aunt, Regina Kewalski, notified Kimberly to warn Kimberly about disturbing news – that the DA's office had responded to Layne's FOIL request and included the sex videos, the murder videos, still shots of both, and contents extracted from Bianca's phone.

79. On June 29, 2021, Kimberly Devins sent a cease and desist letter to Oneida County's Attorney, the Utica Police Department, District Attorney Scott McNamara, and the City of Utica's Attorney.

80. Upon information and belief, McNamara deliberately retaliated against Kimberly Devins by delaying her access to the criminal evidence of her daughter dying and finally giving her but a modicum of what his office shared with others.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### 18 U.S. Code Section 2252A
### (Certain Activities Relating to Material Constituting or Containing Child Pornography Against All Defendants)

81. Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

82. Defendants have knowingly mailed, transported, or shipped using means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, child pornography.

83. Defendants knowingly distributed child pornography using any means or facility of interstate or foreign commerce that has been mailed, or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

84. Defendants knowingly distributed material that contains child pornography using any means or facility of interstate or foreign commerce or that has been mailed or has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

85. Defendants knowingly reproduced child pornography for distribution through the mail, or by using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer.

86. Defendants knowingly distributed through the mail, or using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any material or purported material in a manner that reflects the belief, or that is intended to cause another to believe that the material or purported material is, or contain an obscene visual depiction of a minor engaging in sexually explicit conduct; or a visual depiction of an actual minor engaging in sexually explicit conduct.

87. Bianca was at all times in her life a minor.  Defendants knew Bianca was a minor.

88. Defendants lawfully possessed child pornography depicting Bianca.

89. Defendants distributed through the Internet and/or mail child pornography depicting Bianca to at least the following: producers at A&E, producers at 48 Hours, Alissa Tallman aka Antimone Layne.

90. Plaintiff suspects that Defendants distributed child pornography with others as well, including producers at MTV and Peacock TV.

91. Defendants were aware of the contents of the child pornography evidence they distributed because Defendants were actively prosecuting the case of Brandon Clark at the time the child pornography was shared with at least two producers; and their entire

case rested on the videos and screenshots captured by Clark moments before he killed Bianca.

92. Defendants were repeatedly asked by Kimberly Devins not to share the child pornography and specifically not to share it in response to FOIL requests.  Yet, even after receiving these pleas, Defendants shared the content through interstate mail and internet with at least one other individual (Layne).

93. Upon information and belief Defendants used federal mail or interstate internet companies to distribute child pornography depicting Bianca.

94. Plaintiff seeks temporary, preliminary, and permanent injunctive relief, compensatory and punitive damages, the costs of the civil action and reasonable fees for attorneys and experts, and all such other relief as the court deems proper.

### SECOND CAUSE OF ACTION
**(18 U.S. Code 2255 Civil Remedy for Personal Injuries Against All Defendants)**

95. Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

96. As a victim of 18 U.S. Code Sections 2252 and 2252A, Plaintiff suffered personal injury.

97. Plaintiff suffered indignity and loss of privacy.

98. Plaintiff's injury is amplified by the fact that Defendants knew from the evidence in the case and articles in the media that Bianca had already been a victim of child sexual exploitation when a rape video of her went viral on Discord at age 15 and that this incident and more recent solicitations from adult men had both caused Bianca lifelong trauma and also been among the events that incited Clark's jealous rage.

99. To then have the highest law enforcers in the county engage in the very same conduct is of particular injury.

100.     Plaintiff seeks actual damages or liquidated damages in the amount of

$150,000 per each image for each incident of dissemination, and the cost of the action,

including reasonable attorney's fees and other litigation costs reasonably incurred,

punitive damages, and preliminary and equitable relief as the court determines to be

appropriate.

### THIRD CAUSE OF ACTION
### (Negligence Against All Defendants)

101.     Plaintiff re-alleges and incorporates by reference the allegations contained in

the preceding paragraphs of this Complaint.

102.     Bianca Devins was a crime victim.

103.     Defendants had a duty to Bianca to exercise reasonable care in the handling of

evidence depicting her.

104.     In its pursuit of positive press, Defendants voluntarily undertook to

extravagantly share evidence with members of the press and the public.

105.     Defendants recklessly disregarded the United States child pornography statutes

106.     Defendants recklessly disregarded the fact they were violating federal laws and

causing injury to Bianca's memory by disseminating child pornography of Bianca.

107.     Defendants took no steps to mitigate the harms from sharing child pornography

depicting Bianca.

108.     Defendants acted far inferior to the standard of care exercised by other

prosecutor's offices.

109.     Defendants knew of the special harm that would be caused to Plaintiff by

releasing the murder and child pornography videos and photos of Bianca in light of the

numerous trolls obsessed with Bianca on the internet who have solicited this content.

110.     Defendants' actions were of particular cruelty in light of the trauma Bianca had

endured from being a victim of child pornography starting at age fifteen and recent

incidents of child exploitation being among the incidents inciting Brandon's jealous

murder of Bianca. For Defendants to continue the exploitation of Bianca is

unconscionable.

111.     Defendants recklessly disregarded Kimberly Devins' warnings they were

disseminating child pornography and instead, continued to disseminate it.

112.     Defendants negligently failed to enact or enforce policies, procedures, and a

system for not disseminating child pornography.

113.     Defendants failed to properly supervise its employees to ensure that they did

not continue to disseminate child pornography depicting Bianca.

114.     Defendants were negligent per se.

115.     As a direct and proximate cause of Defendants' negligence, child pornography

depicting Bianca was disseminated to members of the media, the press, and the public,

causing the Estate of Bianca Devins to spend hours advocating with recipients of the

child pornography to erase the child pornography, abstain from publishing or further

disseminating the material, and prepare for the devastation of potentially the child

pornography leaking onto the internet.

116.     Each of the foregoing acts, omissions and factual allegations contained in the

preceding paragraphs constitute an independent act of negligence on the part of

Defendants and one or more or all above stated acts were proximate causes of the

injuries sustained by Plaintiff.

117.     Plaintiff seeks compensatory and punitive damages, the cost of the action,

including reasonable attorney's fees and other litigation costs reasonably incurred,

punitive damages, and preliminary and equitable relief as the court determines to be appropriate.

## FOURTH CAUSE OF ACTION
### (Negligent Supervision Against Oneida County)

118.     Plaintiff re-alleges and incorporates by reference the allegations contained in the preceding paragraphs of this Complaint.

119.     Bianca Devins was a crime victim.

120.     District Attorney Scott McNamara and Does #1-20 were employees of Oneida County, all were employed by the Oneida County District Attorney's Office.

121.     Defendant Oneida County knew that Defendant McNamara and Defendants Does #1-20 were engaging in tortious activity by disseminating child pornography depicting Bianca.

122.     Oneida County knew that Defendant McNamara and Defendants Does #1-20 have a propensity to tortiously disseminate child pornography depicting Bianca because they had voluntarily shared it with various media entities without any legal requirement to do so.

123.     The Estate of Bianca Devins sent Defendant McNamara a letter on February 15, 2021 asking that the cease distributing the child pornography and notify all recipients that the it was illegal to possess or share child pornography.

124.     The Februrary 15, 2021 letter placed Defendants McNamara and Oneida County on notice of the tortious conduct.

125.     Upon information and belief, Defendants continued to distribute the materials, most egriously to Alissa Tallman aka Antimone Layne in June of 2021.

126.     The tortious distribution of these materials was accomplished using Oneida premise, systems, and resources. Because Oneida County District Attorney's Office had possession of the evidence, it follows that Defendants Does #1-20 would have had to access either physical or electronic files to make copies. These files must have been stored on Oneida County District Attorney's Office premises and/or computer systems.

127.     Onedia County District Attorney failed to stop its employees from continuing to disseminate child pornography.

128.     As a direct and proximate cause of Defendant's negligent supervision, child pornography depicting Bianca was disseminated to members of the media, the press, and the public, causing the Estate of Bianca Devins to spend hours advocating with recipients of the child pornography to erase the child pornography, abstain from publishing or further disseminating the material, and prepare for the devastation of potentially the child pornography leaking onto the internet.

129.     Each of the foregoing acts, omissions and factual allegations contained in the preceding paragraphs constitute negligent supervision on the part of Defendant Oneida County and one or more or all above stated acts were proximate causes of the injuries sustained by Plaintiff.

130.     Plaintiff seeks compensatory and punitive damages, the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, punitive damages, and preliminary and equitable relief as the court determines to be appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief against each and every Defendant herein, jointly and severally:

A. Compensatory damages in an amount according to proof which is fair, just and reasonable;

B. Punitive damages under federal law and New York State law, in an amount according to proof and which is fair, just and reasonable against all Defendants;

C. Actual or liquidated damages in the amount of $150,000 per image for each incident of dissemination (whichever is greater) pursuant to 18 U.S.C. § 2255;

D. Attorney's fees and costs of suit under 18 U.S.C. §§ 2252A and 2255;

E. All other damages, penalties, costs, interest and attorneys' fees as allowed by 18 U.S.C §§ 2252A and 2255 and as otherwise allowable under New York State and/or federal law;

F. Temporary, preliminary, and permanent injunctive relief pursuant to 18 U.S.C § 2252A enjoining all Defendants from further dissemination of content depicting Bianca Devins, including but not limited to child pornography, the data extracted from her cellular phone, and images and recordings of her being murdered; and further requiring all Defendants to ensure that any recipients of content depicting Bianca Devins that Defendants disseminated is secured and contained;

G. Preliminary and equitable relief pursuant to 18 U.S.C. § 2255 enjoining all Defendants from further dissemination of content depicting Bianca Devins, including but not limited to child pornography, the data extracted from her cellular phone, and images and recordings of her being murdered; and further requiring all Defendants to ensure that

any recipients of content depicting Bianca Devins that Defendants disseminated is
secured and contained.

## **PLAINTIFF'S REQUEST FOR A JURY TRIAL**

TRIAL BY JURY IS HEREBY DEMANDED UNDER FED. R. CIV. P. 38(b).

Dated:          Brooklyn, New York
                July 15, 2021

                                                Respectfully submitted,


                                                */s/Carrie Goldberg*
                                                Carrie Goldberg
                                                C.A. Goldberg, PLLC
                                                *Attorneys for Plaintiff*
                                                *Estate of Bianca Devins*