UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ESTATE OF BIANCA DEVINS,

                              Plaintiff,

v.                                                          6:21-CV-0802 (GTS/ATB)

ONEIDA COUNTY; ONEIDA COUNTY
DISTRICT ATTORNEY'S OFFICE;
SCOTT D. MCNAMARA; and JOHN DOES
1-20,

                              Defendants.
_____

APPEARANCES:                                  OF COUNSEL:

C.A. GOLDBERG, PLLC                           CARRIE GOLDBERG, ESQ.
  Counsel for Plaintiff                       ADAM G. MASSEY, ESQ.
16 Court Street, 33rd Floor
Brooklyn, NY 11241

KENNEY SHELTON LIPTAK NOWAK, LLP              DAVID H. WALSH, ESQ.
  Counsel for Defendants                      DANIEL CARTWRIGHT, ESQ.
4615 North Street
Jamesville, NY 13078

GLENN T. SUDDABY, United States District Judge

## <u>DECISION and ORDER</u>

       Currently before the Court, in this civil action filed by the Estate of Bianca Devins

("Plaintiff") against Oneida County, Oneida County District Attorney's Office, District Attorney

Scott D. McNamara and John Does 1-20 (collectively, "Defendants"), is Defendants' motion to

dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P.

12(b)(1) and/or failure to state a claim pursuant to Fed R. Civ. P. 12(b)(6).  (Dkt. No. 18.)[1]  For

_____

[1]       According to Plaintiff's Complaint, Defendant John Does 1-20 are "employees and/or

the reasons set forth below, Defendants' motion is granted, and Plaintiff's claims are dismissed without prejudice.

## I.   RELEVANT BACKGROUND

### A.   Plaintiff's Complaint

Generally, in its Complaint, Plaintiff asserts four claims arising from its allegations that Defendants gave to the media and public "sex and murder videos" and "nude images" of Bianca Devins ("Devins" or "Decedent") following her murder by Brandon Clark on July 14, 2019: (1) a claim against all Defendants for knowingly distributing materials containing child pornography under 18 U.S.C. § 2252A; (2) a claim against all Defendants for personal injuries under 18 U.S.C. § 2255; (3) a claim against all Defendants for negligence under New York State law; and (4) a claim against Defendant Oneida County for negligent supervision under New York State law.  (Dkt. No. 1 [Plf.'s Compl.].)

### B.   Summary of Parties' Briefing on Defendants' Motion to Dismiss

#### 1.   Defendants' Memorandum of Law

Generally, in their motion to dismiss, Defendants assert twelve arguments.  (Dkt. No. 18, Attach. 1, at 12-39 [Defs.' Memo. of Law].)[2]

First, Defendants argue that the Court must dismiss Plaintiff's third and fourth claims (i.e., for negligence and negligent supervision under state law) for lack of subject-matter

---

agents of Oneida County and Oneida County District Attorney's Office who participated in the claims alleged herein."  (Dkt. No. 1, at ¶ 26 [Plf.'s Compl.].) Although defense counsel has not formally appeared on behalf of Defendant John Does 1-20 (Dkt. No. 7), defense counsel argues for the dismissal of claims against (among others) Defendant John Does 1-20 (*see, e.g.,* Dkt. No. 18, Attach. 1, at 18 [attaching page "9" of Defs.' Memo. of Law].).  As a result, the Court shall treat the above-referenced motion as having been brought by all Defendants.

[2]     Page citations in this Decision and Order refer to the screen numbers on the Court's Case Management / Electronic Case Filing ("CM/ECF") System, not to the page numbers on the documents contained therein.

jurisdiction because, before filing those claims (which are all asserted against municipal Defendants), Plaintiff failed to comply with two conditions precedent to commencing an action against a municipality under both N.Y. Gen. Mun. Law § 50-e-i-h and N.Y. County Law § 52: (1) the requirement that Plaintiff serve its notice of claim at least 30 days before the commencement of the action; and (2) the requirement that Plaintiff allow a timely noticed examination before trial, pursuant to N.Y. Gen. Mun. Law § 50-h.  (*Id.* at 12-16.)

Second, Defendants argue that, to the extent that they are asserted against Defendant Oneida County District Attorney's Office,  the Court must dismiss Plaintiff's first claim (for distributing child pornography under 18 U.S.C. § 2252A), second claim (for personal injuries under 18 U.S.C. § 2255), and third claim (for negligence under state law) for the following two reasons: (1) Plaintiff already named Oneida County as a defendant (rendering Plaintiff's claims against Defendant Oneida County District Attorney's Office redundant of Plaintiff's claims against Defendant Oneida County); and (2) in any event, the District Attorney's Office is an administrative arm of Oneida County under New York State law, and therefore is not a proper defendant in this action.  (*Id.* at 16-17.)

Third, Defendants argue that, to the extent that Plaintiff asserts its first, second, and third claims against Defendants McNamara and John Does 1-20 in their official capacities, the Court must dismiss those claims because "official capacity claims are duplicative of claims of municipal liability . . . ."  (*Id.* at 17-18.)

Fourth, Defendants argue that, to the extent that Plaintiff asserts its first, second, and third claims against Defendant McNamara in his individual capacity, the Court must dismiss those claims because they are not supported by factual allegations plausibly suggesting that McNamara was personally involved in the alleged dissemination of materials that Plaintiff claims contain

child pornography.  (*Id.* at 18-19.)

Fifth, Defendants argue that the Court must dismiss Plaintiff's first claim (for distributing child pornography under 18 U.S.C. § 2252A) and second claim (for personal injuries under 18 U.S.C. § 2255), because Plaintiff lacks Article III standing to bring those claims. (*Id.* at 19-21.) More specifically, Defendants argue that these claims did not accrue during the decedent's lifetime, which ended on July 14, 2019, but rather accrued when Plaintiff learned of them on or about June 28-29, 2021.  (*Id.*)

Sixth, Defendants argue that the Court must dismiss Plaintiff's first and second claims because, even setting aside the previously mentioned deficiency, Plaintiff fails to allege facts plausibly suggesting the three elements of Article III standing.  (*Id.* at 21-23.)

Seventh, Defendants argue that, to the extent Plaintiff asserts its first and second claims against Defendant Oneida County, the Court must dismiss those claims because the plain language of 18 U.S.C. §§ 2252(A) and 2255 (which limits the statutes' application to "persons") establish that the statutes do not apply to municipalities.  (*Id.* at 23-24.)

Eighth, Defendants argue that, to the extent Plaintiff asserts its first and second claims against Defendant Oneida County, the Court must dismiss those claims because Defendant Oneida County cannot be liable for disclosing the alleged pornographic material merely by complying with the New York State Freedom of Information Law ("FOIL"), codified at N.Y. Pub. Off. L. §§ 84-90, which permits disclosure of the material even in the absence of a valid FOIL exemption.  (*Id.* at 25-31.)[3]

---

[3]      Defendants argue that New York State's FOIL applies to Defendant Oneida County because Oneida County, through its District Attorney's Office, meets the definition of an "agency" under N.Y. Pub. Off. Law § 86(3).  (Dkt. No. 18, Attach. 1, at 27-28 [Defs.' Memo. of Law].)

Ninth, Defendants argue that the Court must dismiss any claims against Defendant Oneida County that are premised on a theory of vicarious liability because it cannot be held liable under the principle of *respondeat superior*. (*Id.* at 32.)

Tenth, Defendant argues that the Court must dismiss any claims asserted against Defendant Oneida County because the factual allegations in Plaintiff's Complaint show that it is entitled to qualified immunity as a matter of law for three reasons: (1) Plaintiff's Complaint fails to allege facts plausibly suggesting a violation of either 18 U.S.C. §§ 2255A or 2255; (2) even if Plaintiff's Complaint contains factual allegations plausibly suggesting a violation of either 18 U.S.C. §§ 2252A or 2255, any violation of Plaintiff's constitutional rights was not clearly established at the time of the alleged violation; and (3) even if a violation of Plaintiff's constitutional rights was clearly established, it was objectively reasonable for Defendant Oneida County to believe that disclosing the contents of the relevant criminal investigation file—including the materials allegedly constituting child pornography—was lawful. (*Id.* at 32-37.)

Eleventh, Defendants argue that the Court must dismiss Plaintiff's second claim (for personal injuries under 18 U.S.C. § 2255) because (1) Defendants did not violate 18 U.S.C. § 2252A, and (2) in any event, any such violation of 18 U.S.C. § 2252A did not cause personal injuries to the alleged victim (i.e., Bianca Devins), who was deceased at the time of dissemination. (*Id.* at 37-38.)

Twelfth, Defendants argue that, to the extent any of Plaintiff's claims seek an award of punitive damages against Defendant Oneida County or any of its Defendant-employees in their official capacities, the Court must dismiss those claims, because "[m]unicipalities and municipal employees sued in their official capacity are immune from punitive damages." (*Id.* at 39) (internal citation omitted).

5

### 2.      Plaintiff's Opposition Memorandum of Law

Generally, in its opposition memorandum of law, Plaintiff asserts twelve arguments. (Dkt. No. 27, at 10-30 [Plf.'s Opp'n Memo. of Law].)

First, Plaintiff argues that the Court must not dismiss its federal claims, because the language of both 18 U.S.C. §§ 2252A and 2255 does not immunize municipalities from liability after disseminating child pornography.  (*Id.* at 10-13.)

Second, Plaintiff argues that the Court must not dismiss its federal claims on the ground of lack of standing because, contrary to Defendants' argument, Plaintiff does have standing to bring its claims under 18 U.S.C. §§ 2252A and 2255.  (*Id.* at 13-18.)  More specifically, Plaintiff argues that it has standing to pursue its claims under 18 U.S.C. §§ 2252A and 2255 for three reasons: (1) Plaintiff's injuries began accruing during the decedent's lifetime; (2) Plaintiff's injuries began accruing at the time the alleged illegal material was captured; and (3) Plaintiff has alleged facts plausibly suggesting that it has Article III standing.  (*Id.*)

Third, Plaintiff argues that the Court must not dismiss its federal claims, because Defendant Oneida County's violation of 18 U.S.C. § 2252A caused injuries that satisfy the requirements of alleging a violation of 18 U.S.C. § 2255.  (*Id.* at 18-19.)

Fourth, Plaintiff argues that the Court must not dismiss its federal claims, because Defendants' obligation to not violate federal law supersedes any duty to comply with New York State's FOIL.  (*Id.* at 19-23.)  Additionally, Plaintiff argues that Defendants' reliance on New York State's FOIL is misplaced because Defendants admitted to disclosing the pornographic material to third parties without ever receiving a FOIL request from those parties.  (*Id.* at 20-23.)

Fifth, Plaintiff argues that the Court must not dismiss its state law claims based on a lack of subject-matter jurisdiction, because Defendants had actual knowledge of the specific facts

giving rise to the state law claims for more than 30 days before Plaintiff filed this action.  (*Id.* at
23-25.)  Plaintiff argues that, as a result, the Court must adopt the same analysis that is used in
special proceedings to serve an untimely notice of claim under New York State law.  (*Id.*)

Sixth, Plaintiff argues that the Court must not dismiss any of its claims against Defendant
Oneida County, because Oneida County can be held liable under the theory of *respondeat
superior*.  (*Id.* at 25-26.)  More specifically, Plaintiff argues that, although municipalities "cannot
be held liable for negligence in the performance of a governmental function," there is an
exception to this rule when a "special relationship" exists.  (*Id.* at 25.)  Plaintiff argues that, in
this case, *respondeat superior* is a sufficient theory of liability, because a "special relationship"
existed between the employees of Defendant Oneida County (namely, two Assistant District
Attorneys) and Kimberly Devins, the administrator for the Estate of Bianca Devins.  (*Id.* at 25-
26.)

Seventh, Plaintiff argues that Defendant Oneida County is not entitled to qualified
immunity.  (*Id.* at 27-28.)

Eighth, Plaintiff argues that the Court must not dismiss any claims against Defendant
McNamara, because the Complaint alleges facts plausibly suggesting his personal involvement
in the conduct giving rise to this action.  (*Id.* at 28-29.)

Ninth, Plaintiff consents to discontinue its claims against Defendant Oneida County
District Attorney's Office, because of Defendants' representation that Defendant Oneida County
District Attorney's Office is an administrative arm of Defendant Oneida County and not an
independent entity.  (Dkt. No. 27, at 29 [Plf.'s Opp'n Memo. of Law].)  However, Plaintiff
conditions this discontinuance on an agreement that, in the event evidence suggests otherwise, it
may continue to pursue claims against Defendant Oneida County District Attorney's Office.

(*Id.*)

Tenth, Plaintiff argues that the Court must exercise its discretion in determining whether to award punitive damages.  (*Id.* at 29.)  Additionally, Plaintiff argues that Defendants have failed to provide the Court with any case law in support of the argument that punitive damages should not be awarded against Defendant Oneida County.  (*Id.*)  Finally, Plaintiff argues that the only cases Defendants cite arise under 42 U.S.C. § 1983, and not the federal statutes at issue in this action.  (*Id.*)

Eleventh, Plaintiff argues that the Court must not dismiss its claims, because the interests of justice demand that Defendants be held liable for distributing child pornography.  (*Id.* at 29-30.)

Twelfth, Plaintiff argues that, if the Court is inclined to grant Defendants' motion to dismiss, it should grant Plaintiff leave to amend its Complaint.  (*Id.* at 6, 25, 30.)

### 3.    Defendants' Reply Memorandum of Law

Generally, in their reply memorandum of law, Defendants assert thirteen arguments. (Dkt. No. 34, at 8-24 [Defs.' Reply Memo. of Law].)

First, Defendants argue that the Court must dismiss Plaintiff's third and fourth claims (i.e., for negligence and negligent supervision under state law) for lack of subject-matter jurisdiction, because, in its opposition memorandum of law, Plaintiff improperly requests that the Court ignore well-established case law and instead apply a framework that is traditionally reserved for petitions to file a late notice of claim under N.Y. Gen. Mun. Law § 50-e(5).  (*Id.* at 8-9.)

Second, Defendants argue that the Court must dismiss Plaintiff's first and second claims for lack of Article III standing, because Plaintiff's argument (i.e., that these claims against

Defendant Oneida County are actionable in that the materials allegedly constituting child pornography were created by the perpetrator) is inapplicable to this case because Defendant Oneida County "could not have possibly come into possession of these materials until after the murder was committed, and could not have 'disseminated' the alleged 'child pornography' until after the decedent [had] passed." (*Id.* at 9-11.)

Third, Defendants argue that the Court must dismiss Plaintiff's first and second claims for lack of Article III standing because, even setting aside the previously mentioned defect, Plaintiff cannot satisfy the "case or controversy" requirement due to the fact that "the dead lack the capacities that litigants must have to allow for a true Article III case or controversy." (*Id.* at 11) (citation omitted).

Fourth, Defendants argue that the Court must dismiss all claims against Defendant Oneida County District Attorney's Office with prejudice, because Plaintiff has conceded that it is an improper party. (*Id.* at 12.)

Fifth, Defendants argue that the Court must dismiss all claims against Defendants McNamara and John Does 1-20 in their official capacities because, in addition to the fact that "an official-capacity suit against a municipal official is, in all respects other than name, to be treated as a suit against the [governmental] entity," Plaintiff did not address this argument in its opposition and therefore conceded it. (Dkt. No. 34, at 12-13 [Defs.' Reply Memo. of Law]) (internal quotations and citations omitted).

Sixth, Defendants argue that the Court must dismiss all claims against Defendant McNamara in his individual capacity, because Plaintiff's allegations concerning McNamara pertain to actions taken while in his *official* capacity as District Attorney for Oneida County. (*Id.* at 13-15.)

Seventh, Defendants argue that the Court must dismiss Plaintiff's first and second claims, because the reference to "any person" in 18 U.S.C. §§ 2252(A) and 2255 indicates that Congress did not intend for the statutes to apply to defendants that are not "persons." (*Id.* at 15.) Defendants argue that, had Congress intended for the statutes to apply to non-persons, it would have so indicated. (*Id.*) Moreover, Defendants argue that, although the definition of a "person" includes counties and municipalities in the context of an action brought under 42 U.S.C. § 1983, this definition is inapplicable to this action based on the claims Plaintiff asserts. (*Id.* at 15-18.)

Eighth, Defendants argue that the Court must dismiss Plaintiff's first and second claims, because Defendant Oneida County was required to comply with New York State's FOIL, which obligated it to disclose the underlying criminal file. (*Id.* at 18-19.) More specifically, Defendants argue that the case law cited by Plaintiff, *Mulgrew v. Bd. of Educ. of City Sch. Dis. of New York*, 919 N.Y.S.2d 786 (N.Y. Sup. Ct. Jan. 10, 2011), supports only the two following conclusions: (1) that a plaintiff may have standing to challenge FOIL requests when the decedent is the target of such request; and (2) that, absent an arbitrary or capricious finding, a responding entity will not be deemed to have improperly satisfied its obligations under FOIL by responding to such a request. (*Id.*)

Ninth, Defendants argue that the Court must dismiss Plaintiff's claims against Defendant Oneida County to the extent that it alleges liability under the theory of *respondeat superior*, because the "special relationship" exception is inapplicable to this case. (*Id.* at 19-21.) Although Defendants acknowledge that the "special relationship" exception applies in the context of negligence and negligent-supervision claims, they argue that, because it is anticipated that the Court will dismiss the state law claims due to Plaintiff's alleged failure to comply with the requirements of N.Y. Gen. Mun. Law §§ 50-e-i-h and N.Y. County Law § 52, the Court must

also reject Plaintiff's "special relationship" argument.  (*Id.*)  Finally, Defendants argue that

Plaintiff has failed to provide the Court with any other viable reasons to hold a municipality

vicariously liable for an employee's alleged dissemination of "child pornography," and that the

Court should construe the absence of any opposition to this argument as a concession that

warrants the dismissal of any claims against Defendant Oneida County premised upon the theory

of *respondeat superior*.  (*Id.*)

Tenth, Defendants argue that the Court must dismiss all claims against Defendant

McNamara and John Does 1-20 because the employees of Defendant Oneida County are entitled

to qualified immunity.  (*Id.* at 21-22.)

Eleventh, Defendants argue that the Court must dismiss Plaintiff's second claim (for

personal injuries under 18 U.S.C. § 2255) because Defendants did not violate 18 U.S.C. §

2252A, and, even if a violation occurred,  it did not cause personal injuries to the alleged victim,

who predeceased the dissemination of the material at issue.  (*Id.* at 22.)

Twelfth, Defendants argue that the Court must dismiss any claims that seek an award of

punitive damages against Defendant Oneida County or any of its Defendant-employees in their

official capacities, because "[m]unicipalities and municipal employees sued in their official

capacity are immune from punitive damages."  (*Id.* at 23) (internal citation omitted).

Thirteenth, Defendants argue that the Court must deny Plaintiff's request for leave to

amend its Complaint, because Plaintiff did not file a notice of cross-motion, a proposed

Amended Complaint, and a memorandum of law in accordance with N.D.N.Y. L.R. 15.1.  (*Id.* at

23-24.)

## II.    RELEVANT LEGAL STANDARDS

### A.    Legal Standard Governing a Motion to Dismiss for Lack of Subject-Matter Jurisdiction

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger*, 473 U.S. 365, 374 (1978).  Generally, a district court may properly dismiss a claim for a lack of subject-matter jurisdiction where the court lacks constitutional or statutory power to adjudicate it.  *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).  A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction.  *Makarova*, 201 F.3d at 113.  The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]).  When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff.  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Makarova*, 201 F.3d 113).

**B.     Legal Standard Governing a Motion to Dismiss for Failure to State a Claim**

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp.2d 204, 211, nn. 15-16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) [emphasis added].  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement

to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain" pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp.2d at 212, n.20 (citing Supreme Court case). On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp.2d at 212, n.17 (citing Supreme Court cases) (emphasis added).[4]

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp.2d at 212, n.18 (citing Supreme Court cases); *Rusyniak v. Gensini,* 629 F. Supp.2d 203, 213 & n.32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases). For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits." 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003). For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak,* 629 F. Supp.2d at 213, n.22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-52 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15

---

[4]     *Accord, Flores v. Graphtex*, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (Munson, J.); *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998); *Powell v. Marine Midland Bank*, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.).

U.S.C. § 1. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 127 S. Ct. at 1968-69. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice" standard turns on the *plausibility* of an actionable claim. *Id*. at 1965-74. The Court explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id*. at 1965. More specifically, the "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id*.

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (internal quotation marks and citations omitted). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id*., it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to

14

relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949. Similarly, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 129 S. Ct. at 1949 (internal citations and alterations omitted).  Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citations omitted).

Finally, with regard to what documents are considered when a dismissal for failure to state a claim is contemplated, generally, when contemplating a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the four corners of the complaint may be considered without triggering the standard governing a motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer, (2) documents incorporated by reference in the complaint (and provided by the parties), (3) documents that, although not incorporated by reference, are "integral" to the complaint, or (4) any matter of which the court can take judicial notice for the factual background of the case.[5]

---

[5]     *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *L-7 Designs, Inc. v. Old Navy, LLC*, 10-573, 2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed. R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the complaint or answer, [2] documents incorporated by reference in the complaint (and provided by the parties), [3] documents that, although not incorporated by reference, are "integral" to the complaint, or [4] any matter of which the court can take judicial notice for the factual background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (explaining that a district court considering a dismissal pursuant to Fed. R. Civ. P. 12(b)(6) "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. . . .  Where a document is not incorporated by reference, the court may neverless consider it where the complaint relies heavily upon its terms and effect, thereby rendering the document 'integral' to the complaint . . . .  However, even if a document is 'integral' to the complaint, it must be clear on the record that no

## III.   ANALYSIS

Because Defendants have moved for dismissal under Fed. R. Civ. P. 12(b)(1) and

12(b)(6), the Court must first assess whether it has subject-matter jurisdiction over Plaintiff's

claims under Fed. R. Civ. P. 12(b)(1) before turning to the question of whether Plaintiff has

failed to state a claim upon which relief can be granted.  *See Wong v. CKX, Inc.*, 890 F. Supp.2d

411, 414-15 (S.D.N.Y. 2012) ("When presented with a motion under Rule 12(b)(1) to dismiss for

lack of subject matter jurisdiction and Rule 12(b)(6) to dismiss for failure to state a claim upon

which relief can be granted, the Court must first analyze the Rule 12(b)(1) motion to determine

whether the Court has subject matter jurisdiction necessary to consider the merits of the

action.").

### A.   Whether the Court Lacks Subject-Matter Jurisdiction Over Plaintiff's Claims

#### 1.   Whether the Court Should Dismiss Plaintiff's First Claim (for Distributing Child Pornography Under 18 U.S.C. § 2252A) Against All Defendants and Second Claim (for Personal Injuries Under 18 U.S.C. § 2255) Against All Defendants for Lack of Article III Standing

After carefully considering the matter, the Court answers this question in the negative for

the reasons stated in Plaintiff's opposition memorandum of law.  (Dkt. No. 27, at 13-18 [Plf.'s

Opp'n Memo. of Law].)   To the reasons stated by Plaintiff, the Court adds the following

---

dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that
there exist no material disputed issues of fact regarding the relevance of the document.")
[internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147,
152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as
an exhibit or any statements or documents incorporated in it by reference.") (internal quotation
marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72
(2d Cir. 1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or
incorporate by reference a [document] upon which it solely relies and which is integral to the
complaint," the court may nevertheless take the document into consideration in deciding [a]
defendant's motion to dismiss, without converting the proceeding to one for summary
judgment.") (internal quotation marks and citation omitted).

analysis.

"Standing is a proper ground upon which to challenge a court's subject matter jurisdiction; '[i]f plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim.'" *Clarex Ltd.*, 2012 WL 4849146, at *3 (quoting *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 [2d Cir. 2012]).  To show Article III standing, the plaintiff "must have suffered an injury in fact (1) that is concrete and particularized, (2) that is causally linked to the defendant's challenged conduct, and (3) that is likely to be redressed by a favorable decision." *Dubuisson v. Stonebridge Life Ins. Co.*, 887 F.3d 567, 573 (2d Cir. 2018).  "To establish an injury in fact, a plaintiff need only show that he or she suffered an invasion of a legally protected interest that is concrete and particularized." *Dubuisson*, 887 F.3d at 574 (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 [2016]).  "For an injury to be particularized, it must affect the plaintiff in a personal and individual way, and an injury is concrete if it is 'real and not abstract,' although injury need not be tangible to be concrete." *Dubuisson*, 887 F.3d at 574 (citing *Spokeo, Inc.*, 136 S. Ct. at 1548).

"The plaintiff . . . bears the burden 'clearly to allege facts demonstrating that [it] is a proper party to invoke judicial resolution of the dispute.'" *Steinberger v. Lefkowitz*, 634 F. App'x 10, 11 (2d Cir. 2015) (quoting *Warth v. Seldin*, 442 U.S. 490, 518 [1975]).  As a result, a plaintiff must also show that they have "prudential standing," which includes a "general prohibition on a litigant's raising another person's legal rights." *Keepers, Inc. v. City of Milford*, 807 F.3d 24, 39 (2d Cir. 2015).  In this regard, the plaintiff must have been injured in a "personal and individual way" to have standing. *Lujan*, 504 U.S. at 560 n.1.

Applying these legal principles, the Court respectfully disagrees with Defendants' argument that Plaintiff has failed to establish the elements for Article III standing because

Devins died before the dissemination of the child pornography.  (Dkt. No. 18, Attach. 1, at 22 [Defs.' Memo. of Law].)  Defendants argue that *Fund Liquidation Holdings LLC*, 991 F.3d 370, 384-85 (2d Cir. 2021), must guide the Court's analysis.  There, the Second Circuit found that the plaintiffs, two previously dissolved investment funds, lacked Article III standing to sue because they lacked legal existence, which resulted in no Article III case or controversy for the district court to adjudicate.  *Id.* at 384.  The Second Circuit explained that, although federal law "sets the ground rule that a plaintiff . . . must have legal existence to have constitutional standing," whether a plaintiff "satisfies that requirement . . . turns on an examination of state law."  *Fund Liquidation Holdings LLC*, 991 F.3d at 386 (applying Cayman Islands law to determine the legal existence of plaintiff corporation).

In comparison to *Fund Liquidation Holdings LLC* and the case law upon which it relies (in which the litigants were dissolved, deceased, or fictitious), the facts of this case differ because Plaintiff is the Estate of the decedent, not the decedent herself.  Moreover, there is no question regarding Plaintiff's legal existence given that the Oneida County Surrogate's Court issued the Limited Letters of Administration for the Estate of Bianca Devins to Kimberly Devins to serve as the decedent's "personal representative."[6]  (Dkt. No. 1, at ¶ 23 [Plf.'s Compl.].)

With respect to whether Plaintiff's injury in fact is concrete and particularized, a central focus "is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including (as relevant here) reputational harm."  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021) (citing *Spokeo, Inc.*, 578 S. Ct. at 340-41).  Critical to the

---

[6]       Under N.Y. Est. Powers & Trusts Law § 1-2.13, a personal representative is "a person who has received letters to administer the estate of a decedent."

Court's analysis is the fact that, "'[a]fter death, one is no longer a person within our constitutional and statutory framework, and has no rights of which he [or she] may be deprived.'"  *Infante v. Dignan*, 782 F. Supp.2d 32, 38 (W.D.N.Y. 2011) (quoting *Whitehurst v. Wright*, 592 F.2d 834, 840 [5th Cir. 1979]); *see Helmer v. Middaugh*, 191 F. Supp.2d 283, 285 (N.D.N.Y. 2002) (Hurd, J.) ("Even assuming all of the facts in the favor of the plaintiff, a dead man does not have any constitutional rights.").

Here, granted, the Court has some difficulty finding that the dissemination of the child pornography in question to media outlets (including the producers for "48 Hours" and A&E) could have caused an intangible reputational injury to Plaintiff (Decedent's estate). This is because, even if the dissemination caused Devins' Instagram account to grow in followers from 2,000 to 166,000—some of whom besieged the accounts of her family members with images of Devins' dead body—the injury (which the Court views more as emotional than reputational) was inflicted on Devins' family, not her estate.  (Dkt. No. 1, at ¶¶ 51-52.)

However, Plaintiff persuasively argues that it has suffered an economic injury due to having to "spend time and money on lawyers urging recipients [of the disseminated material] to destroy the content . . . ."  (Dkt. No. 27, at 17-18 [Plf.'s Opp'n Memo. of Law].)  In addition to alleging facts plausibly suggesting that Defendants disseminated the material in question to various media outlets, Plaintiff alleges facts plausibly suggesting that it was forced to repeatedly communicate—through counsel—with the District Attorney's Office regarding the material and Defendants' dissemination of it.  (*See, e.g.,* Dkt. No. 1, at ¶¶ 15, 68, 70, 71, 73, 74, 79.)  Moreover, Plaintiff has persuaded the Court that the economic injuries it alleges could be redressed by a favorable decision "both in the quest for injunctive relief which would stop the County from dissemination and financial recovery to deter the County and others with the same

19

predilection."  (Dkt. No. 27, at 17-18 [Plf.'s Opp'n Memo. of Law].)

For these reasons, the Court rejects Defendants' argument that it must dismiss Plaintiff's

first and second claims for lack of Article III standing.  However, again, whether Plaintiff has the

*capacity* to bring those claims under N.Y. Est. Pow. & Trst. Law § 11-3.1 is a different question,

[7] which will be addressed below in Part III.B.2. of this Decision and Order.

> **2.**      **Whether the Court Lacks Subject-Matter Jurisdiction Over Plaintiff's Third Claim (for Negligence Under State Law) Against All Defendants and Fourth Claim (for Negligent Supervision Under State Law) Against Defendant Oneida County**

After carefully considering the matter, the Court answers this question in the affirmative

regarding Plaintiff's third and fourth claims against Defendants, except for Plaintiff's third claim

against Defendants John Does 1-20 in their individual capacities and any such claim against

Defendant McNamara in his individual capacity.

"State claims brought under state law in federal court are subject to state procedural

rules."  *Henneberger v. Cnty. of Nassau*, 465 F. Supp.2d 176, 197 (E.D.N.Y. 2006) (citing

*Felder v. Casey*, 487 U.S. 131, 141 [1988]).  Generally, "[t]he service of a notice of claim is a

condition precedent to the maintenance of an action against a public corporation to recover

damages for a tortious or wrongful act."  *Fotopoulos v. Bd. of Fire Comm'rs of Hicksville Fire

Dist.*, 76 N.Y.S.3d 592, 594 (N.Y. App. Div., 2d Dep't 2018).

Under N.Y. County Law § 52, a plaintiff is required to adhere to the following

procedures:

> Any claim or notice of claim against a county for damage, injury
> or death, or for invasion of personal or property rights, of every

---

[7]      *See Roby v. Corp. of Lloyd's*, 796 F. Supp. 103, 110 (S.D.N.Y. 1992) (holding that, "[c]apacity to be sued and legal existence are separate and distinct concepts"), *aff'd on other grounds*, 996 F.2d 1353 (2d Cir. 1993).

> name and nature . . . , alleged to have been caused or sustained in
> whole or in part by or because of any misfeasance, omission of
> duty, negligence or wrongful act on the part of the county, its
> officers, agents, servants or employees, must be made and served
> in compliance with section fifty-e of the general municipal law.
> Every action upon such claim shall be commenced pursuant to the
> provisions of section fifty-i of the general municipal law.

N.Y. County Law § 52.

Where a notice of claim is required by law as a condition precedent to the

commencement of an action against a county, or an employee thereof, "the notice of claim shall

comply and be served in accordance with the provisions of this section within ninety days after

the claim arises."  N.Y. Gen. Mun. Law § 50-e(1)(a); *see also Bielski v. Green*, 674 F. Supp.2d

414, 427 (W.D.N.Y. 2009) (explaining that N.Y. County Law § 52 makes Section 50-e of the

N.Y. General Municipal Law applicable to actions against a county).  This requirement applies

to tort claims.  *Hamilton v. Cnty. of Onondaga*, 15-CV-1333, 2018 WL 4554496, at *16

(N.D.N.Y. Sept. 21, 2018) (Sannes, J.) (citing *Grasso v. Schenectady Cnty. Pub. Library*, 817

N.Y.S.2d 186 [3d Dep't 2006]).

Additionally, under N.Y. Gen. Mun. Law §§ 50-i(1)(a)-(b), a plaintiff is required to

adhere to the following procedures:

> No action or special proceeding shall be prosecuted or maintained
> against a city, county, town, village . . . for personal injury . . .
> alleged to have been sustained by reason of the negligence or
> wrongful act of such a city, county, town, village, unless . . . a
> notice of claim shall have been made and served upon the city,
> county, town, village . . . in compliance with section fifty-e of this
> article . . . [and] shall appear by and as an allegation in the
> complaint or moving papers that at least thirty days have elapsed
> since the service of such notice . . . .

N.Y. Gen. Mun. Law § 50-i(1)(a)-(b).

Notice of claim requirements are construed strictly by New York State courts.  Failure to

comply with these requirements ordinarily requires dismissal for failure to state a cause of action." *Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793-94 (2d Cir. 1999).

> **a.      Plaintiff's Third Claim (for Negligence) to the Extent It Is Asserted Against Defendants Oneida County and Oneida County District Attorney's Office and Fourth Claim (for Negligent Supervision) Against Defendant Oneida County**

On June 28, 2021, Plaintiff served its notice of claim on Defendant Oneida County.  (Dkt. No. 18, Attach. 2, at 1-3.)  As a result, under N.Y. Gen. Mun. Law § 50-i(b), Plaintiff was required to wait at least thirty days before commencing its action against Defendant Oneida County (and Defendant Oneida County District Attorney's Office).  However, Plaintiff waited only seventeen days before commencing the current action on July 15, 2021.  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

Plaintiff concedes this fact, arguing that it filed its lawsuit prematurely because of the extraordinary relief it was seeking in the form of a temporary restraining order.  (Dkt. No. 27, at 23-25 [Plf.'s Opp'n Memo. of Law].)  Plaintiff requests that the Court analyze its premature notice of claim under the standard that governs a late notice of claim.[8]

Generally, "[t]he exhaustion doctrine requires a party to exhaust available administrative remedies before invoking the jurisdiction of the courts."  *N.Y.S. Teamsters Conf. Pension & Ret. Fund v. McNicholas Transp. Co.*, 658 F. Supp. 1469, 1473 (N.D.N.Y. 1987) (citing *Myers v.*

---

[8]      The Court notes that, under N.Y. Gen. Mun. Law § 50-e(5), when determining whether to grant leave to serve a late notice of claim, courts must consider the following three factors: (1) whether the plaintiff has demonstrated a reasonable excuse for failing to serve a timely notice of claim or for the subsequent delay in seeking leave to serve a late notice of claim; (2) whether the municipality-defendant had actual knowledge of the essential facts constituting the claim within ninety days after the claim had arose or a reasonable time thereafter; and (3) whether the delay in seeking leave would substantially prejudice the municipality-defendant in its ability to defend against the action.  *Matter of Galicia v. City of New York*, 107 N.Y.S.3d 430, 431 (N.Y. App. Div. 2d Dep't 2019).

*Bethlehem Steel Shipbuilding Corp.*, 303 U.S. 41, 50-51 [1938]).  More specifically, "service of a notice of claim is not required where the cause of action is in equity and money damages are merely incidental . . . ."  *Smith v. Town of Long Lake*, 40 N.Y.S.2d 391, 394 (N.Y. App. Div. 3d Dep't 2007).

Here, even considering Plaintiff's requests for injunctive relief, the Court cannot overlook the fact that Plaintiff's two state law claims also seek compensatory damages and punitive damages.  (Dkt. No. 1, at 21 [Plf.'s Compl.].)  Therefore, the Court finds that Plaintiff's two state law claims are more than merely incidental to the injunctive relief that it seeks.  *See Libbey v. Village of Atlantic Beach*, 982 F. Supp.2d 185, 214 (E.D.N.Y. 2013) (rejecting the plaintiff's argument that it was not required to strictly abide by New York's notice of claim requirements because the plaintiff failed to establish that the cause of action was one for injunctive relief in which damages were incidental).

Furthermore, Plaintiff has failed to provide the Court with any previous instances in which a federal court elected to conduct the analysis that Plaintiff has requested.  Because "federal courts do not have jurisdiction to hear complaints from plaintiffs who have failed to comply with the notice of claim requirement, or to grant permission to file a late notice," the Court cannot grant Plaintiff's request that it analyze its premature notice of claim under the standard that governs a late notice of claim.  *Rabadi v. City of Yonkers*, 21-CV-1258, 2022 WL 889734, at *8 (S.D.N.Y. Mar. 25, 2022).

Additionally, Plaintiff's argument ignores the fact that, to survive a motion to dismiss, a plaintiff must plead as follows: "(1) a notice of claim was served; (2) at least thirty days elapsed since the notice of claim was filed and before the complaint was filed; and (3) in that time, the defendant neglected to or refused to adjust or satisfy the claim."  *Coggins v. Cnty. of Nassau*, 988

F. Supp.2d 231, 251 (E.D.N.Y. 2013).  Notably, "[t]he plaintiff bears the burden of demonstrating compliance with the notice of claim requirement." *Chabot v. Cnty. of Rockland, New York*, 18-CV-4109, 2019 WL 3338319, at \*9 (S.D.N.Y. July 25, 2019).

Here, Plaintiff has failed to meet its burden of showing that it complied with the notice-of-claim requirements.  In strictly construing these requirements, the Court finds that thirty days had not elapsed between the date on which Plaintiff served its notice of claim on Defendant Oneida County and the date on which Plaintiff filed its Complaint.  Therefore, even accepting as true the allegations contained in the Complaint and drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff's negligence and negligent supervision claims are procedurally barred.

The Court also finds unavailing Plaintiff's request for leave to amend its Complaint, because "filing an amended complaint after thirty days have elapsed will not fix the defect if the original complaint was filed less than thirty days from the service of the notice [of claim], as it is the original complaint that commences the lawsuit." *Myers v. City of New York*, 13-CV-1006, 2015 WL 13881601, at \*21 (S.D.N.Y. Sept. 30, 2015).  For these reasons, the Court finds that Plaintiff's third claim (for negligence) and fourth claim (for negligent supervision) against Defendant Oneida County must be dismissed due to Plaintiff's failure to adhere to the requirements set forth within N.Y. Gen. Mun. Law § 50-i(b).

Before turning to the next issue, some discussion is appropriate regarding the nature of this dismissal.  "Where it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) (citations omitted).[9]  "[A]n opportunity to amend is not required where

---

[9]    *Accord*, *Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at \*1 (N.D.N.Y. Sept. 22,

the defects in the plaintiff's claims are substantive rather than merely formal, such that any amendment would be futile." *Sorrentino v. Barr Labs, Inc.*, 09-CV-0591, 2010 WL 2026135, at *5 (N.D.N.Y. May 20, 2010) (Suddaby, C.J.).  Moreover, where the Court lacks subject-matter jurisdiction over a claim, it lacks the power to dismiss that claim with prejudice (even if the Court were to find that better pleading might not cure the defects in that claim).  For these reasons, the Court's dismissal of these claims must be, and is, without prejudice.

> **b.      Plaintiff's Third Claim (for Negligence) to the Extent It Is Asserted Against Defendant McNamara in His Official and Individual Capacity and Defendant John Does 1-20 in Their Official and Individual Capacities**

For reasons similar to those stated above in Part III.A.1. of this Decision and Order, the Court finds that Plaintiff has failed to adhere to N.Y. Gen. Mun. Law § 50-i(b) by not allowing thirty days to elapse between the date on which it served its notice of claim on Defendants McNamara and John Does 1-20 and the date on which Plaintiff filed this lawsuit.

It is well settled that failure to adhere to notice-of-claim requirements bars state claims against individual defendants in their official capacities.  *Dorsey v. City of Albany Police Dep't*, 15-CV-0859, 2016 WL 11605138, at *2 (N.D.N.Y. Apr. 13, 2016) (McAvoy, S.J.).  Because Plaintiff has failed to satisfy a condition precedent for bringing claims against Defendant McNamara in his official capacity and Defendant John Does 1-20 in their official capacities, the

---

1997) (Pooler, J.) ("[T]he court need not grant leave to amend where it appears that amendment would prove to be unproductive or futile.") (citation omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (denial not abuse of discretion where amendment would be futile); *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile.  Such a futile request to replead should be denied.") (citation omitted); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (citation omitted); *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("[W]here . . . there is no merit in the proposed amendments, leave to amend should be denied").

Court is required to dismiss (without prejudice) those claims for lack of subject-matter jurisdiction.

However, with respect to state claims against individual defendants in their *individual* capacities, "service of a notice of claim is not a condition precedent to the commencement of an action against a county's employees or agents unless the county is required to indemnify the individual defendants." *Brooks v. Cnty. of Nassau*, 54 F. Supp.3d 254, 258 (E.D.N.Y. 2014) (internal quotation marks omitted). Whether an employee acts within the scope of his or her employment or duties is a "fact sensitive question." *Longsworth v. Cnty. of Nassau*, 17-CV-6787, 2020 WL 5369044, at *3 (E.D.N.Y. Sept. 8, 2020) (citing *Int'l Shared Servs., Inc. v. Cnty. of Nassau*, 634 N.Y.S.2d 722, 724 [2d Dep't 1995]). "An employee acts within the scope of his [or her] employment when he [or she] acts for the purpose of serving the employer." *George v. N.Y.C. Transit Auth.*, 04-CV-3263, 2008 WL 4274362, at *2 (E.D.N.Y. Sept. 17, 2008) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756-57 [1998]). Furthermore, an employee's conduct is within the scope of his or her employment when the employee acted "at the 'explicit direction of the employer,' or where the employees' actions were a foreseeable, ordinary, and natural incident or attribute of their employment." *Pizzuto v. Cnty. of Nassau*, 239 F. Supp.2d 301, 313 (E.D.N.Y. 2003) (quoting *Schiraldi v. AMPCO Sys. Parking*, 9 F. Supp.2d 213, 219 [W.D.N.Y. 1998] [internal citation omitted]). On the other hand, an employee's conduct that is motivated by "personal reasons unrelated to the employer's interest" is outside the scope of his or her employment. *Ierardi v. Sisco*, 119 F.3d 183, 188 (2d Cir. 1997) (internal quotation marks omitted).

Here, the Court finds that the Complaint supports its negligence claim with factual allegations plausibly suggesting that Defendant John Does 1-20 acted outside the scope of their

official duties (and in their own personal interests).  More specifically, Plaintiff's Complaint

alleges that, at some point before the filing of the Complaint in this action, Assistant Oneida

County District Attorney Sarah DeMellier ("ADA DeMellier") allegedly informed Kimberly

Devins that, on an unknown date and time, while "at a local tavern," an officer employed by the

Utica Police Department had shared "body cam footage from the crime scene" with patrons also

at the tavern.  (Dkt. No. 1, at ¶ 65 [Plf.'s Compl.].)  The Court has difficulty understanding how

this officer was engaged in conduct for the purpose of serving his or her employer when he or

she shared this body camera footage.  (*Id.*)  Additionally, Defendants have neither argued nor

established that any law enforcement agency explicitly directed the officer to engage in this

conduct, or that the officer's conduct was a foreseeable, ordinary, and natural incident, or that it

was attributable to his or her employment in law enforcement.  (*See generally* Dkt. No. 18,

Attach. 1; Dkt. No. 34.)

 Finally, setting aside whether Plaintiff has alleged facts plausibly suggesting Defendant

McNamara's personal involvement in the violations alleged (an issue addressed below in Part

III.B.4. of this Decision and Order), the Court has not been persuaded that Oneida County was

"required" to indemnify[10] its District Attorney for allegedly permitting such disclosures (which

allegedly contravened repeated representations by two of his Assistant District Attorneys and

various aspects of federal child-pornography law) to render the service of a notice of claim a

condition precedent to the commencement of an action against him.  (Dkt. No. 1, at ¶¶ 15, 74.)

 For these reasons, the Court finds that Plaintiff's third claim (for negligence) against

Defendant McNamara in his official capacity and Defendant John Does 1-20 in their official

---

[10]     *Brooks*, 54 F. Supp.3d at 258.

capacities must be dismissed without prejudice due to Plaintiff's failure to adhere to the requirements set forth within N.Y. Gen. Mun. Law § 50-i(b).  However, Plaintiff's failure to comply with the notice-of-claim requirements does not strip the Court of subject-matter jurisdiction over Plaintiff's negligence claim against Defendant John Does 1-20 in their individual capacities and any such claim asserted against Defendant McNamara in his individual capacity.

**B.   Whether Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Granted**

**1.   Whether Defendant Oneida County Is Protected from Liability on Plaintiff's First Claim (for Distributing Child Pornography Under 18 U.S.C. § 2252A) and Second Claim (for Personal Injuries Under 18 U.S.C. § 2255) Because It Was Complying with New York State FOIL[11]**

After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

In support of their argument that the Court must dismiss Plaintiff's first and second claims against Defendant Oneida County, because it was merely complying with New York State's FOIL when it engaged in the activity that gave rise to those claims, Defendants rely heavily upon the plain language and legislative purpose of New York State's FOIL.  (*See generally* Dkt. No. 18, Attach. 1, at 25-31; Dkt. No. 34, at 18-19.)  Therefore, a threshold question that the Court must answer is whether "Congress, in enacting the Federal Statute, intend[ed] to exercise its constitutionally delegated authority to set aside the laws of a State,"

---

[11]   Although Defendants do not expressly indicate whether they are asserting this argument under Fed. R. Civ. P. 12(b)(6) or 12(b)(1), the Court finds that the argument is more properly asserted under Fed. R. Civ. P. 12(b)(6) because it is challenging the actionability of two federal claims.

because "preemption is a question of congressional intent." *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 30 (1996); *English v. Gen. Elec. Co.*, 496 U.S. 72, 78-79 (1990).  More specifically, the Court must address whether, as it is applied to the facts in this case, N.Y. Pub. Off. Law § 87(2) is preempted by 18 U.S.C. § 2252A.

The doctrine of federal preemption is engrained in the Supremacy Clause of the Constitution, which states that "the Laws of the United States . . . shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."  U.S. Const. art. VI, cl. 2.  "Federal preemption of state statute can be express or implied, and generally occurs: [1] where Congress has expressly preempted state law, [2] where Congress has legislated so comprehensively that federal law occupies an entire field of regulation and leaves no room for state law, or [3] where federal law conflicts with state law."  *SPGGC, LLC v. Blumenthal*, 505 F.3d 183, 188 (2d Cir. 2007) (internal quotation marks omitted).

Conflict preemption exists where the "state law 'actually conflicts with federal law,' including where 'it is impossible for a private party to comply with both state and federal requirements, or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'"  *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 95 (2d Cir. 2012) (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 [1990]).  The "obstacle" element of the conflict-preemption standard "precludes state law that poses an actual conflict with the overriding federal purpose and objective"; however, "the mere fact of tension between federal and state law is generally not enough to establish an obstacle supporting preemption, particularly when the state law involves the exercise of traditional police power."  *Figueroa v. Foster*, 864 F.3d 222, 235 (2d Cir. 2017).

Rather, "the purpose of Congress is the ultimate touchstone," including the "intended effects" of the federal statute, and "the conflict between state law and federal policy must be a sharp one." *Figueroa*, 864 F.3d at 235.

The "obstacle" branch of preemption at issue in this case involves the conflict between the language appearing to indicate the permissive obligations of N.Y. Pub. Off. Law § 87(2)(i.e., that a state agency "may deny access to records") and the federal purpose and objective of 18 U.S.C. §§ 2252A and 2255.  When evaluating congressional intent, courts "assum[e] that the historic police powers of the States [are] not to be superseded by the Federal Act unless that was the clear manifest and purpose of Congress." *Altria Grp., Inc. v. Good*, 555 U.S. 70, 77 (2008) (internal quotation marks omitted).  However, "[t]he presumption against federal preemption disappears . . . in fields of regulation that have been substantially occupied by federal authority for an extended period of time." *Wachovia Bank, N.A., v. Burke*, 414 F.3d 305, 314 (2d Cir. 2005).  Sections 87(2)(a)-(b) of New York's Public Officers Law state as follows:

> Each agency shall, in accordance with its published rules, make available for public inspection and copying all records, except those records or portions thereof that may be withheld pursuant to the exceptions of rights of access appearing in this subdivision.  A denial of access shall not be based solely on the category or type of such record and shall be valid only when there is a particularized or specific justification for such denial.  Each agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency may deny access to records or portions thereof that . . . are specifically exempted from disclosure by state or federal statute . . . , [or] if disclosed would constitute an unwarranted invasion of privacy under the provisions of [N.Y. Pub. Off. Law § 89(2)] . . . .

N.Y. Pub. Off. Law §§ 87(2)(a)-(b).[12]

---

[12]     The Court notes that Defendant Oneida County did not invoke the exception for instances where the information being requested would "constitute an unwarranted invasion of privacy." N.Y. Pub. Off. Law § 87(2)(b).

With respect to the statute's plain language, Defendants argue that nothing within the statute prevents an agency from disclosing pornographic material after receiving a request because New York State's FOIL employs language that permits an agency (such as Defendant Oneida County) to exercise its own discretion to withhold such records, with or without the deletion of identifying details.  (Dkt. No. 18, Attach. 1, at 25-30 [Defs.' Memo. of Law].)  The Court rejects this argument as a non-sequitur, having little if anything to do with whether the acts in question were prohibited by both 18 U.S.C. §§ 2252A and 2255.  Specifically, this argument ignores the fact that the distribution of child pornography is expressly outlawed by 18 U.S.C. § 2252A and 18 U.S.C. § 2252A(a)(2)(A).

Defendants also argue that the disclosure of the material depicting Devins was permissible pursuant to New York State's FOIL, because the material satisfies the definition of "record" under N.Y. Pub. Off. Law § 86(4).[13]  (Dkt. No. 18, Attach. 1, at 28 [Defs.' Memo. of Law].)  The Court rejects this argument because the "records" at issue in this case constitute child pornography, and Defendants have not provided any support for the notion that the New York State legislature intended for "records" to include child pornography.  Specifically, the Court is unpersuaded by *Russo v. Nassau Cnty. Cmty. Coll.*, 623 N.E.2d 15, 19 (N.Y. 1993), which Defendants cite in support of their position that Defendant Oneida County "cannot be [held] liable for fulfilling FOIL requests for the underlying criminal file—even if its content include the alleged 'records' constituting 'child pornography.'"  (Dkt. No. 18, Attach. 1, at 28

---

[13]    Under N.Y. Pub. Off. Law § 84(4), a "record" is defined as "any information kept, held, filed, produced or reproduced by, with or for an agency or the state legislature, in any physical form whatsoever including, but not limited to, reports, statements, examinations, memoranda, opinions, folders, files, books, manuals, pamphlets, forms, papers, designs, drawings, maps, photos, letters, microfilms, computer tapes or discs, rules, regulations or codes."  N.Y. Pub. Off. Law § 86(4).

[Defs.' Memo. of Law].)  Although the New York Court of Appeals determined that "sexually explicit videos" in *Russo* met the definition of "records" under New York State's FOIL, there is no indication whatsoever that those videos constituted child pornography.  *See generally Russo*, 623 N.E.2d at 19.  Instead, the material subject to the FOIL request in *Russo* was used for numerous years as part of curriculum in a "college-level course taught in a public college and provided by the college"—facts that would become particularly troublesome if the records had contained child pornography.  *Russo*, 623 N.E.2d at 19.

Generally, federal and state laws that prohibit certain activities relating to material constituting child pornography contain express or implied exceptions that allow for law enforcement agencies to possess the material.  *Doe v. Gwinnett Cnty. Sch. Dist.*, 18-CV-5278, 2020 WL 9809987, at *4 (N.D. Ga. Nov. 2, 2020).  Although the conduct at issue in this case involves that of a law enforcement agency, the Court does not read either federal statute to contain an exception permitting law enforcement agencies to distribute child pornography to non-law enforcement third parties.  *Cf. Doe v. Gwinnett Cnty. Sch. Dist.*, 18-CV-5278, 2020 WL 9810028, at *2 (N.D. Ga. Aug. 24, 2020) ("The Court sees no exception to the state or federal child pornography statutes which permits counsel in a civil action to have possession of child pornographic materials.").  More specifically, the federal statutes at issue, 18 U.S.C. §§ 2252A and 2255, do not contain an exception for governmental agencies to distribute materials constituting child pornography merely for the reason of complying with various states' freedom of information laws.

With respect to their argument that the legislative history for New York State's FOIL supports their reading and application of the statute, Defendants cite a New York State Court of Appeals case discussing the applicability of the exemptions found within N.Y. Pub. Off. Law §

84 *et seq.*, as a method for an agency to confirm or deny the existence of investigative or surveillance records.  (Dkt. No. 18, Attach. 1, at 25-26 [Defs.' Memo. of Law] [citing *Abdur-Rashid v. New York City Police Dep't*, 100 N.E.3d 799 (N.Y. 2018)].)  *Abdur-Rashid* stands for the proposition that an agency may use the exemptions under the New York State FOIL as a "shield" to restrict the amount and type of information it is required to disclose when responding to such requests.  However, in the current lawsuit, Defendants attempt to use the permissive obligations regarding the FOIL's exemptions as a "sword," i.e., a justification of its decision to distribute child pornography in response to numerous FOIL requests. (Dkt. No. 18-1, at 27 ["Importantly, [FOIL] is permissive; thus, while [an] agency may withhold records under certain circumstances, [an] agency may disclose even if records are deniable.'"]).

Certainly, the Court agrees with the New York State Court of Appeal's finding that the purpose of N.Y. Pub. Off. Law § 84 *et seq.* (including its exemptions), is "[t]o promote open government and public accountability . . . to make . . . [certain] records available to the public . . . [because of the policy that] the public is vested with an inherent right to know and that official secrecy is anathema to our form of government." *Abdur-Rashid*, 100 N.E.3d at 803 (internal citations quotation marks omitted).  However, what cuts against Defendants' interpretation of the legislative purpose of New York State's FOIL is the recognition that there is occasionally "'a legitimate need on the part of the government to keep some matters confidential.'" *Abdur-Rashid*, 799 N.E.3d at 803 (quoting *Fink v. Lefkowitz*, 393 N.E.2d 463, 465 [N.Y. 1979]).  The Court is hard-pressed to find any indication that the New York State legislature enacted N.Y. Pub. Off. Law § 84, *et seq.*, for the purpose of allowing law enforcement agencies discretion to disclose particularly sensitive information, such as materials concerning matters of national security or child pornography.  Indeed, such a reading would mean that N.Y. Pub. Off. Law §

87(2) (which sets forth FOIL's exemptions) interferes with the federal government's regulation

of child pornography—a field that is occupied by federal law.  More specifically, Defendant's

interpretation would mean that, with respect to the exemptions set forth in N.Y. Pub. Off. Law §

87(2), agencies could exercise their sole discretion in deciding whether to allow unfettered

access to child pornography by any third party who so requests it pursuant to New York State's

FOIL. Such a reading effectively interferes with the provisions set forth within 18 U.S.C. §

2252A.

Although Defendants alert the Court to the legislative history for New York State's

FOIL, they do so without considering previous judicial and congressional findings that articulate

the constitutional prohibition of child pornography.  Specifically, Defendants have failed to

consider 18 U.S.C. § 2255 (which is commonly referred to as "Masha's Law," and one of the

two federal statutes under which Plaintiff has brought the current lawsuit), which provides that

"[a]ny person who, while a minor, was a victim of a violation of [various sections of Title 18

prohibiting sexual exploitation of children] may sue in any appropriate United States District

Court and shall recover the actual damages such person sustains . . . ."  18 U.S.C. § 2255.

Ultimately, Congress enacted 18 U.S.C. § 2255 for the purpose of "attempt[ing] to

address the 'multi-million dollar' child-exploitation industry, along with the 'physiological,

psychological, and emotional harm caused by the production, *distribution*, and display of child

pornography' and the 'lack [of] effective remedies under Federal law' to 'exploitation victims.'"

*Stephens v. Clash*, 796 F.3d 281, 295 (3d Cir. 2015) (internal citations omitted) (emphasis

added); *see also St. Louis v. Perlitz*, 176 F. Supp.3d 97, 99 (D. Conn. 2016) ("The legislative

history of Masha's Law shows that it was intended to provide a cause of action for victims of

Internet distribution of child pornography.  Congress has recognized that distribution of child

pornography on the Internet inflicts an injury on the minor victims depicted in the pornographic material.").  And to the extent Defendants argue that Defendant Oneida County did not use the Internet to distribute the material at issue, such contention is immaterial, because the statute's general purpose is to deter the distribution of child pornography, not exclusively distribution through the Internet.

Based on the above analysis, it is abundantly clear to the Court that Congress did not intend to create a loophole to shield parties from civil (and even criminal) liability merely because they had an obligation to comply with individual states' freedom of information laws (or, alternatively, could use their discretion when determining whether to withhold records in accordance with an exemption under such laws), but that, rather, when Congress enacted 18 U.S.C. §§ 2252A and 2255, it intended to occupy the entire field of regulation related to eradicating the creation and distribution of child pornography.

It is also apparent to the Court that, when deciding whether to copy and disseminate the materials at issue, Defendants failed to consider the federal counterpart to N.Y. Pub. Off. Law § 84 *et seq.*, the Freedom of Information Act, codified at 5 U.S.C. §552 ("FOIA").  Although FOIA does not govern Defendant Oneida County,[14] federal courts have conducted extensive statutory interpretation, particularly as it relates to its exemptions for non-disclosure of requested records.  Like N.Y. Pub. Off. Law § 84 *et seq.*, FOIA contains several exemptions that allow for an agency to not produce requested records.  5 U.S.C. § 552(b).  Of relevance here is the exemption found in 5 U.S.C. § 552(b)(7)(C), which, like its New York State FOIL counterpart, allows for the non-disclosure of "records or information compiled for law enforcement purposes"

---

[14]     "Agency" is defined to mean "each authority of the Government of the United States . . . ."  5 U.S.C. § 551(1).

35

when such material "could reasonably be expected to constitute an unwarranted invasion of

personal privacy."  5 U.S.C. § 552(b)(7)(C).

Specifically, the Supreme Court considered the scope of the exemption in 5 U.S.C. §

552(b)(7)(C) and held

> as a categorical matter that a third party's request for law
> enforcement records or information about a private citizen can
> reasonably be expected to invade that citizen's privacy, and that
> when the request seeks no "official information" about a
> Government agency, but merely records that the Government
> happens to be storing, the invasion of privacy is "unwarranted."

*Dep't of Just. v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 780 (1989).  When faced with

the issue of whether the same exemption extended to an instance where the family of a decedent

(who had died by suicide) had objected to the release of photographs showing the condition of

the body at the scene of death, the Supreme Court answered that question in the affirmative and

held that "FOIA recognizes surviving family members' right to personal privacy with respect to

their close relative's death-scene images."  *Nat'l Archives and Recs. Admin. v. Favish*, 541 U.S.

157, 170 (2004).[15]  More specifically, the Supreme Court emphasized that, "[r]ecords or

information are not to be released under FOIA if disclosure 'could reasonably be expected to

constitute an unwarranted invasion of personal privacy.'"  *Favish*, 541 U.S. at 165 (quoting 5

---

[15]    Notably, the Supreme Court's holding was congruous with various Courts of Appeals and
other lower courts that had previously addressed the same question.  *See, e.g.*, *New York Times
Co. v. Nat'l Aeronautics and Space Admin.*, 782 F. Supp. 628, 631-32 (D.D.C. 1991) (sustaining
a privacy claim under the narrower Exemption 6 with respect to an audiotape of the Space
Shuttle Challenger astronaut's last words, because "[e]xposure to the voice of a beloved family
member immediately prior to that family member's death . . . would cause the Challenger
families pain" and inflict "a disruption [to] their peace of mind every time a portion of the tape is
played within their hearing"); *Katz v. Nat'l Archives and Recs. Admin.*, 862 F. Supp. 476, 485
(D.D.C. 1994) (exempting from FIOA disclosure the autopsy X-rays and photographs of
President Kennedy on the ground that their release would cause "additional anguish" to the
surviving family), *aff'd on other grounds*, 68 F.3d 1438 (D.C. Cir. 1995).

U.S.C. § 552[b][7]).

Had Defendant Oneida County been subject to FOIA, there is no question that the "invasion of personal privacy" exemption would have extended to Devins' family, including her mother, Kimberly Devins.  In fact, in comparison to the material at issue in *Favish*, the material at issue in this case has a greater potential to infringe upon the personal privacy of the decedent's family because it captures both Devins' murder and her unclothed body (i.e., it contains a greater degree of explicit content than photographs of a deceased individual). Based on these facts and the guidance provided by the Supreme Court with respect to the nearly identical FOIA counterpart to the New York State's FOIL exemption regarding disclosures that "constitute an unwarranted invasion of personal privacy," the Court refuses to hold that Defendants may avoid liability through reliance on New York State's FOIL.

For these reasons, the Court rejects Defendants' argument that Defendant Oneida County is immune from liability on Plaintiff's first and second claims due to FOIL.

> **2. Whether the Court Should Dismiss Plaintiff's First Claim (for Distributing Child Pornography under 18 U.S.C. § 2252A) Against All Defendants and Second Claim (for Personal Injuries Under 18 U.S.C. § 2255) Against All Defendants for Lack of Capacity to Sue**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth below.

As indicated above in Parts I.B. and III.A. of this Decision and Order, Defendants argue that Plaintiff does not have "standing" to bring its two federal claims, because Plaintiff has no authority to bring claims that arose after Devins' death on July 14, 2019.  (Dkt. No. 18, Attach. 1, at 19-21 [Defs.' Memo. of Law].)  Furthermore, Defendants argue that Plaintiff is not the real party in interest and therefore lacks capacity to sue.  (*Id.* at 19 n.1.)

Although Defendants have cast their first argument as one regarding "standing," the "two

legal doctrines [of standing and capacity to sue] are not interchangeable." *Cmty. Bd. 7 v.*

*Schaffer*, 639 N.E.2d 1 (1994).  As the New York Court of Appeals has explained:

> 'Standing' is an element of the larger question of 'justiciability.' . .
> . 'Capacity,' in contrast, concerns a litigant's power to appear and
> bring its grievance before the court.  The concept of a lack of
> capacity, which has also occasionally been intermingled with the
> analytically distinct concept of a failure to state a cause of action,
> does not admit of precise or comprehensive definition.  Capacity,
> or the lack thereof, sometimes depends purely upon a litigant's
> status.

*Cmty. Bd. 7*, 639 N.E.2d at 1 (citations omitted).  Here, the Court construes both arguments as

regarding a lack of capacity to sue.  This difference is material because, as discussed above in

Part III.A. of this Decision and Order, standing is a jurisdictional requirement, which the plaintiff

bears the burden of satisfying.  *Spokeo, Inc.*, 136 S. Ct. at 1547.  Because both of Defendants'

arguments challenge Plaintiff's capacity to sue, the Court will review these arguments under Fed.

R. Civ. P. 12(b)(6).

Under Fed. R. Civ. P. 17(b)(3), capacity to sue for individuals in a representative capacity

is determined by "the law of the state where the court is located."  Fed. R. Civ. P. 17(b)(3).

Therefore, the Court must determine whether Plaintiff has representative capacity to sue under

New York State law.[16]  In the event that an action is brought by a decedent's personal

representative, New York State law provides that "any action, other than an action for injury to

person or property, may be maintained by and against a personal representative in all cases and

in such manner as such action might have been maintained by or against his decedent."  N.Y.

Est. Pow. & Trst. Law § 11-3.1.

---

[16]     A personal representative is "a person who has received letters to administer the estate of
a decedent."  N.Y. Est. Pow. & Trst. Law § 1-2.13.  Here, there is no dispute that the Oneida
County Surrogate's Court issued the Limited Letters of Administration for the Estate of Bianca
Devins to Kimberly Devins.  (Dkt. No. 1, at ¶ 23 [Plf.'s Compl.].)

In response to Defendants' motion, Plaintiff relies on N.Y. Est. Pow. & Trst. Law § 11.3-2(b) to support its argument that it does have "standing" to pursue its federal claims against Defendants because the injury began accruing at the time that Brandon Clark ("Clark") began to capture film of Devins on July 14, 2019.  (Dkt. No. 27, at 13-18 [Plf.'s Opp'n Memo. of Law].)  Granted, under N.Y. Est. Pow. & Trst. Law § 11.3-2(b), "[n]o cause of action for injury to person is lost because of the death of the person in whose favor the cause of action *existed*."  N.Y. Est. Pow. & Trst. Law § 11.3-2(b) (emphasis added).  However, N.Y. Est. Pow. & Trst. Law § 11.3-2(b) applies only to instances in which the defendant had engaged in conduct that could give rise to a cause of action against him *before* the decedent's death.

In other words, fatal to Plaintiff's argument is the timing of *Defendants*' injury to *Plaintiff*, which is not the timing of *Clark's* injury to *Devins*.  Although the material containing video of Devins was captured before her death on July 14, 2019, Defendants' injury to Plaintiff (for purposes of her two federal claims) occurred when they disseminated the child pornography regarding Devins (which was after her death).  *See Schoeps v. Museum of Modern Art*, 594 F. Supp.2d 461, 466 (S.D.N.Y. 2009) ("[U]nder New York law, a cause of action possessed by the *decedent at the time* of his or her death may be brought subsequently by a representative of the decedent only if the plaintiff has been appointed personal representative of the decedent's estate . . . .") (emphasis added).[17]

_____

[17]    More specifically, the Court notes that, according to Plaintiff's Complaint, the conduct that gave rise to its two federal claims against Defendants occurred when they "distributed through the Internet and/or mail child pornography depicting Bianca [Devins] to at least the following: producers at A&E, producers at 48 Hours, Alissa Tallman aka Antimone Layne," as well as to "producers at MTV and Peacock TV"—conduct that occurred *after* July 14, 2019. (Dkt. No. 1, at ¶ 89 [Plf.'s Compl.].)  This is the case even though Plaintiff tries to rely on Clark's injury to Devins by arguing that Defendant Oneida County "disseminated child pornography that was illegal and injurious to Bianca [Devins] at the moment [that] it was captured."  (Dkt. No. 25, at 14 [Plf.'s Opp'n Memo. of Law].)  The Court notes also that

Therefore, the Court agrees with Defendants that Devins' "personal representative has the authority to bring causes of action that were viable at the time of [her] death, [but] not claims that arose after . . . her death." *Lucker v. Bayside Cemetery*, 979 N.Y.S.2d 8, 15 (1st Dep't 2013) (citing N.Y. Est. Pow. & Trst. Law § 11-3.1; *Matter of Estate of Gandolfo*, 655 N.Y.S.2d 341 [1st Dep't 1997]).  Here, Plaintiff's first and second claims were not viable at the time of Devins' death for the following three reasons: (1) they have not been asserted against Clark; (2) they do not arise from Defendants' conduct occurring before Devins' death; and (3) they have not been asserted by Kimberly Devins in her representative capacity as the administratrix of the Estate of Bianca Devins (but rather were asserted expressly by the Estate itself).  *See Ripley v. Estate of Crooks by Austin*, 19-CV-0523, 2021 WL 4994035, at *3 (W.D.N.Y. Aug. 2, 2021) (citing *Architectural Body Rsch. Found. v. Reversible Destiny Found.*, 335 F. Supp.3d 621, 634 [S.D.N.Y. 2018]) ("Under New York law, a decedent's estate is not a legal entity capable of suing or being sued; any action for or against an estate must be by the executor or administrator in his or her representative capacity.") (internal footnote omitted); *Infante*, 782 F. Supp.2d at 38 ("We do not hold that cover-up of a wrongful death is without civil or criminal effect; rather, we hold that, 'the victims of a cover-up are the decedent's survivors, not the decedent himself.'") (quoting *Gibson v. City of Chicago*, 910 F.3d 1510, 1523 [7th Cir. 1990]); *cf. Ford v. Moore*, 237 F.3d 156, 165 (2d Cir. 2001) (granting the defendant's motion to dismiss on the grounds that a deceased plaintiff had no constitutional protections pertaining to any conduct that occurred after his death).

For these reasons, the Court finds that Plaintiff's first and second claims should be

---

Plaintiff's Complaint did not name, as a Defendant in this action, Clark (i.e., the individual responsible for capturing and creating the material at issue at a time that preceded Devins' death).

dismissed without prejudice for lack of capacity to sue.

> **3. Whether the Court Should Dismiss Plaintiff's First, Second, and Third Claims Against Defendant Oneida County District Attorney's Office on the Alternative Ground that It Is an Improper Party**

The Court dismisses Plaintiff's claims against Defendant Oneida County District Attorney's Office based on Plaintiff's voluntary discontinuance of them.  *See, supra,* Part I.B.2. of this Decision and Order.  The Court declines to impose this dismissal with prejudice based on a lack of showing of cause by Defendants.

> **4. Whether the Court Should Dismiss Plaintiff's Individual-Capacity Claims Against Defendant McNamara Because of a Lack of Factual Allegations Plausibly Suggesting His Personal Involvement**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law.  (Dkt. No. 18, Attach. 1, at 18-19 [Defs.' Memo. of Law]; Dkt. No. 34, at 13-14 [Defs.' Reply Memo. of Law].)  To those reasons, the Court would add the following analysis.

Although the Court has questioned (above in Part III.A.2.b. of this Decision and Order) whether (based on the current briefing) Oneida County was "required" to indemnify its District Attorney for allegedly permitting such disclosures (for purposes of a lack-of-subject-matter-jurisdiction analysis), the Court finds (for purposes of a failure-to-state-a-claim analysis) that Plaintiff's Complaint does not allege facts plausibly suggesting that Defendant McNamara was personally involved in the disclosure of the material in question while acting in his own personal interest (and outside the scope of his official duties).

For example, Plaintiff's Complaint alleges that counsel for Plaintiff sent two letters to Defendant McNamara, not that he personally responded to (or even read) those two letters.  (Dkt. No. 1, at ¶¶ 71, 74.)  Moreover, Plaintiff's Complaint alleges facts plausibly suggesting that it

was two of Defendant McNamara's Assistant District Attorneys, and not McNamara himself, who had repeatedly promised Plaintiff that no such disclosure would occur. (Dkt. No. 1, at ¶¶ 15, 73.) Indeed, the Complaint alleges no such representations by Defendant McNamara himself. (*See generally* Dkt. No. 1.) Finally, while Plaintiff's Complaint alleges that the "DA" responded to Kimberly Devins' own FOIL request, it alleges facts plausibly suggesting that it was "the DA's office," not Defendant McNamara, who "had responded to . . . [Antimone Layne's] FOIL request [which] . . . included the sex videos, the murder videos, still shots of both, and contents extracted from Bianca's phone." (*Id*. at ¶¶ 77-78.)

For these reasons, Plaintiff's individual-capacity claims against Defendant McNamara are dismissed without prejudice.

### 5. Whether the Court Should Dismiss All of Plaintiff's Official-Capacity Claims Against Defendant McNamara and Defendant John Does 1-20 as Duplicative of Plaintiff's Municipal-Liability Claims

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memoranda of law. (Dkt. No. 18, Attach. 1, at 17-18 [Defs.' Memo. of Law]; Dkt. No. 34, at 12-13 [Defs.' Reply Memo. of Law].) As a result, these claims are dismissed without prejudice.

### 6. Defendants' Four Remaining Arguments

Because the Court has already found that adequate grounds exist on which to base its dismissal of all of Plaintiff's claims (except its third claim to the extent it is asserted against Defendant John Does 1-20 in their individual capacities), the Court need not, and does not, evaluate the four remaining arguments asserted by Defendants in favor of dismissal: (1) their seventh argument (that the Court should dismiss Plaintiff's first and second claims against Defendant Oneida County because the plain language of the statutes establishes that they do not

apply to municipalities); (2) their ninth argument (that the Court must dismiss all claims against Defendant Oneida County that are premised on a theory of vicarious liability because it cannot be held liable under the principle of *respondeat superior*); (3) their tenth argument (that the Court must dismiss Plaintiff's claims against Defendant Oneida County on the ground of qualified immunity); and (4) their twelfth argument (that the Court must dismiss all claims to the extent they seek punitive damages against Defendant Oneida County or its Defendant-employees in their official capacities). *See, supra,* Part I.B.1 of this Decision and Order.

### C. Whether the Court Should Dismiss Plaintiff's Sole Remaining Claim (i.e., Its Third Claim to the Extent It Is Asserted Against Defendant John Does 1-20 in Their Individual Capacities) Without Prejudice to Refiling in State Court

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth below.

Where, as here, a district court has dismissed all claims over which it had original jurisdiction, the court may decline to exercise supplemental jurisdiction over remaining state law claims. 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its jurisdiction lies in considerations of judicial economy, convenience and fairness to litigants; if . . . not present a federal court should hesitate to exercise jurisdiction over state claims."); *Klein & Co. Futures, Inc. v. Bd. of Trade of City of New York*, 464 F.3d 255, 262 (2d Cir. 2016) ("It is well settled that where, as here, the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims."); *Hurley v. Cnty. of Yates*, 04-CV-6561, 2005 WL 2133603, at *3 (W.D.N.Y. Aug. 31, 2005); *accord*, *Middleton v. Falk*, 06-CV-1461, 2009 WL 666397, at *9 (N.D.N.Y. Mar. 10, 2009) (Suddaby, J., adopting Report-Recommendation by Homer, J.). The decision is a discretionary one, and its

justification "lies in considerations of judicial economy, convenience and fairness to litigants[.]" *United Mine Workers of Am.*, 383 U.S. at 726; *see also Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("Once a district court's discretion is triggered under § 1367[c][3], it balances the traditional 'values of judicial economy, convenience, fairness, and comity,' in deciding whether to exercise jurisdiction.") (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 [1988]); *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004) ("[W]here at least one of the subsection 1367[c] factors is applicable, a district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values [of] economy, convenience, fairness, and comity.").

After carefully considering the relevant factors (i.e., economy, convenience, fairness, and comity), the Court finds that they weigh decidedly in favor of declining to exercise supplemental jurisdiction over Plaintiff's sole remaining state law claim (i.e., its third claim to the extent it is asserted against Defendant John Does 1-20 in their individual capacities).[18]  As a result, Plaintiff's third claim (to the extent it is asserted against Defendant John Does 1-20) in his or her individual capacity is dismissed without prejudice to refiling in New York State Court pursuant to 28 U.S.C. § 1367(d) and New York State law.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 18) is **GRANTED**; and it is further

---

[18]     The Court notes that it may *sua sponte* render this determination.  *See Rothenberg v. Daus*, 08-CV-0567, 2015 WL 1408655, at *11, n.12 (S.D.N.Y. Mar. 27, 2015) ("[P]laintiffs' contention that the court may not decline to exercise supplemental jurisdiction *sua sponte* contravenes black letter law."); *see also Star Multi Care Servs., Inc. v. Empire Blue Cross Blue Shield*, 6 F. Supp.3d 275, 293 (E.D.N.Y. 2014) ("[T]he Court sua sponte declines to exercise supplemental jurisdiction over the remaining [state law] claims against [defendants].").

**ORDERED** that the following claims in Plaintiff's Complaint (Dkt. No. 1) are

**DISMISSED** **without prejudice**:

> (1)  Plaintiff's first claim (for distribution of child pornography under 18 U.S.C. §
>
> 2252A) against all Defendants;
>
> (2)  Plaintiff's second claim (for personal injuries under 18 U.S.C. § 2255) against
>
> all Defendants;
>
> (3)  Plaintiff's third claim (for negligence under New York State law) to the extent
>
> it is asserted against Defendants Oneida County, Oneida County District
>
> Attorney's Office, and McNamara in his official and individual capacities;
>
> and
>
> (4)  Plaintiff's fourth claim (for negligent supervision under New York State law)
>
> against Defendant Oneida County; and it is further

**ORDERED** that Plaintiff's sole remaining claim in this action (i.e., its third claim for

negligence under New York State law to the extent it is asserted against Defendant John Does 1-

20 in their individual capacities) is **DISMISSED** **without prejudice** to refiling in New York

State Court pursuant to 28 U.S.C. § 1367(d) and New York State law; and it is further

**ORDERED** that the parties submit a letter-brief within **THIRTY (30) DAYS** of the

issuance of this Decision and Order advising the Court of how the Clerk of the Court, who has

been serving as the custodian of the external hard drive, shall properly dispose of it.

Dated:  September 29, 2022
      Syracuse, New York

Glenn T. Suddaby
U.S. District Judge